Wogahn, Trustee, Appellant, vs. Stevens and others, Respondents.

*October 10—November 8, 1940.*

For the appellant there was a brief by *Raymond van Wolkenten* of Madison, and *Harry J. Allen* of Milwaukee, and oral argument by *Mr. van Wolkenten*.

For the respondents Elwell, Kiekhofer, Kellogg, Houghton, and Linehan there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Oscar T. Toebaas.*

ROSENBERRY, C. J.   It is not necessary to state in detail all of the facts set out in the plaintiff's complaint in order to dispose of the questions raised on this appeal.

Sec. 77k (a), title 15, USCA, entitled "Civil liabilities on account of false registration statement," is set out in the margin.[1]

---

[1] "(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein

In the complaint it is alleged that the plaintiff was appointed trustee for forty-five named persons who were purchasers of the common stock of the Continental Service Company, hereinafter called "company," and that said named persons had assigned and conveyed such common stock to the plaintiff as trustee under a trust agreement, a copy of which is attached to the complaint; that the defendants, W. F. Stevens, L. C. George, E. C. Holt, B. E. Buckman, and P. A. Sletteland, were the organizers and promoters of said corporation; that W. F. Stevens was a member of the board of directors and president; that L. C. George was at all times mentioned in the complaint a member of the board of directors and the

---

or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—

"(1) every person who signed the registration statement;

"(2) every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

"(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

"(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

"(5) every underwriter with respect to such security.

"If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person."

vice-president and general manager; that E. C. Holt was a member of the board of directors and secretary-treasurer; that B. E. Buckman was a member of the board of directors of the said company; that P. A. Sletteland was a member of the board of directors and for a time president of the company; that the defendants, Kellogg, Linehan, Houghton, Elwell, and Kiekhofer, are public accountants practicing the same under the firm name and style of Elwell, Kiekhofer & Company, and held themselves out to the public as a firm of certified public accountants.

It is further alleged that on the 28th day of March, 1936, the company filed with the securities exchange commission at Washington a registration statement; that thereafter the afore-mentioned directors caused eleven thousand eighty-four shares of the common stock of the company to be sold to the several named stockholders for $55,420.

It is further alleged that a certain item relating to processing taxes contained in said registration statement was untrue and false; that said false item appears in the statement prepared by Elwell, Kiekhofer & Company and certified to by them as being correct and accurate; that the falsity of the statement contained in the registration statement was discovered about December 1, 1937, and—

"That by virtue of the facts hereinbefore alleged and by virtue of the provisions of the Securities Act of 1933 as amended, the above-named defendants are jointly and severally liable to this plaintiff for the amount of the difference between the amount paid for the said common stock of Continental Service Company and the value thereof at this time; that the value of the common stock of Continental Service Company at this time is nothing, and that the defendants are therefore jointly and severally liable to this plaintiff for the amount of the full purchase price of the aforesaid stock."

The first paragraph in the trust agreement is as follows:

"In consideration of one dollar in hand paid by Lester E. Wogahn to the undersigned, and for other and valuable con-

siderarion, receipt whereof is hereby acknowledged, the undersigned do herewith bargain, sell, assign, transfer and convey to Lester E. Wogahn, hereinafter referred to as the trustee, in trust for the undersigned, the following described securities :" etc.

It will be noted, under the allegations of facts contained in the complaint, that Wogahn is not a purchaser of the stock but is an assignee of the claims if any which each of the several stockholders have against the several defendants. Attention is called to this fact by reason of the language contained in sec. 77k (a), to the effect that—

"any person *acquiring such security* . . . may, either at law or in equity, in any court of competent jurisdiction, sue," etc.

Plaintiff makes no claim that he holds as a purchaser of the stock. It appears from the allegations that he paid only $1, a purely nominal consideration for the transfer to him of the claims of the various stockholders.

It is contended here on behalf of the defendants that claims arising under this section are not assignable. It is conceded that there is no federal statute changing the rule of survivability as it existed at common law. (USCA, title 28, § 778.) The survivability of the right of action created by act of congress must be determined in accordance with federal law and not the law of the state where the cause of action arose. In *Michigan Central R. Co. v. Vreeland* (1913), 227 U. S. 59, 66, 33 Sup. Ct. 192, 57 L. Ed. 417, the question involved was whether a claim under the Federal Liability Act survived. The court said :

"We may not piece out this act of congress by resorting to the local statutes of the state of procedure or that of the injury. The act is one which relates to the liability of railroad companies engaged in interstate commerce to their employees while engaged in such commerce. The power of congress to deal with the subject comes from its power to regulate commerce between the states. . . .

"The statutes of many of the states expressly provide for the survival of the right of action which the injured person might have prosecuted if he had survived. But unless this federal statute which declares the liability here asserted provides that the right of action shall survive the death of the injured employee, it does not pass to his representative, notwithstanding state legislation. The question of survival is not one of procedure, 'but one which depends on the substance of the cause of action.' [Citing cases.]"

Would the cause of action created by sec. 77k (a) have survived under the rules at common law? As a general rule at common law contract actions survived while tort actions died with the person. See 1 Am. Jur. p. 70, §§ 82, 84, and cases cited.

The cause of action which the assignors of the plaintiff had, if any, was one created by statute. Under sec. 77k (e) the measure of damages sustained by reason of false statement contained in a registration statement is the difference between the amount paid for the stock and its market value. The statute does not proceed upon the theory of unjust enrichment and it has no contractual elements in it. It, in effect, penalizes the maker of the false statement or the one certifying to it, and makes him jointly liable with others acting with him as provided by the statute and prescribes a measure of damages.

In *Schreiber v. Sharpless* (1884), 110 U. S. 76, 79, 3 Sup. Ct. 423, 28 L. Ed. 65, which was an action to recover certain penalties and forfeitures for the infringement of a copyright, the court said:

"The suit was not for the damages the plaintiffs had sustained by the infringement, but for penalties and forfeitures recoverable under the act of congress for a violation of the copyright law. The personal representatives of a deceased party to a suit cannot prosecute or defend the suit after his death, unless the cause of action, on account of which the suit was brought, is one that survives by law. R. S. sec. 955. At common law, actions on penal statutes do not survive, . . . and there is no act of congress which establishes any other rule

in respect to actions on the penal statutes of the United States. . . . Whether an action survives, depends on the substance of the cause of action, not on the forms of proceeding to enforce it."

While the matters dealt with in *Schreiber v. Sharpless, supra,* relate to survival, the principles which govern assignability are the same. While we are cited to no case directly in point it is the general rule that a cause of action to enforce the personal liability of an officer, director, or trustee of a corporation is regarded as of a penal or personal rather than of a contractual nature, in which event it does not survive. *Great Western Min. & Mfg. Co. v. Harris* (2d Cir. 1903), 128 Fed. 321, affirmed 198 U. S. 561, 25 Sup. Ct. 770, 49 L. Ed. 1163; *Killen v. Barnes* (1900), 106 Wis. 546, 82 N. W. 536. If, however, the cause of action against the officer, director, or trustee is of a remedial or contractual rather than of a personal nature, it survives his death. *Stephens v. Overstolz* (C. C. 1890), 43 Fed. 465; *Benton v. Deininger* (D. C. 1927), 21 Fed. (2d) 659; *Lindemann v. Rusk* (1905), 125 Wis. 210, 104 N. W. 119.

*Killen v. Barnes, supra,* dealt with the liability to a creditor of corporate officers for deceit which led to the deposit of money, and it was held that an action for such damages did not survive either at the common law or under the statute.

*Lindemann v. Rusk, supra,* was a creditors' action to wind up the affairs of a bank. In that case it was held that liability for wrongfully appropriating the good will of a predecessor bank was not a mere claim for damages for tort but one for injury to personal estate which survives. See also 1 Am. Jur., Abatement and Revival, p. 81, § 107, Liability of corporate officers; p. 89, § 129, title, "Under anti-trust acts," and cases cited.

It is considered that liability under sec. 77k (a) is penal in its nature and not remedial within the meaning of the decisions relating to survivability. Being penal in its nature it

did not survive and is therefore not assignable and the trial court correctly so held. It is in the nature of an action for deceit with damages limited to the purchasers' actual loss, being the difference between what they paid for the stock and the amount for which it can be sold.

It is not necessary for us to consider other questions raised in the case.

*By the Court.*—The order and judgment appealed from are affirmed.