Ara **DERDIARIAN**, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

The **FUTTERMAN CORPORATION** et al., Defendants.

United States District Court
S. D. New York.

Nov. 6, 1963.

Herman Odell, New York City, for plaintiff.

Robinson, Silverman, Pearce & Aronsohn, New York City, Leonard B. Sand, New York City, of counsel, for The Futterman Corporation.

Freedman, Levy, Kroll & Simonds, Washington, D. C., Milton Kroll, Washington, D. C., of counsel, for Kurt H. Grunebaum and New York Hanseatic Corporation.

Halpert & Burger, New York City, Israel Halpert, New York City, of counsel, for Aaron M. Schreiber and Samuel Futterman as Executors of Estate of Robert A. Futterman.

Bondy & Schloss, New York City, David Nierenberg, New York City, of counsel, for Leonard L. Steiner.

David H. Shapiro, New York City, for Richard K. McIntyre.

FEINBERG, District Judge.

Does an action for damages under the federal securities acts survive the death of the alleged wrongdoer? This is the chief issue raised by the motion before the Court. The action is brought under Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 thereto, against a corporation, a number of its directors and officers, a brokerage firm which served as its financial adviser, and the executors of a deceased corporate officer. The deceased officer is Robert A. Futterman, who died in November 1961. Futterman, before his death, was president and chairman of the board of directors of Futterman Corporation.

Plaintiff sues in his individual capacity as a purchaser of Futterman Corporation stock and as a representative of other purchasers. He alleges that defendants

made false and misleading statements or omitted to state material facts which caused the stock of the corporation to be sold at inflated prices to the public, including plaintiff. The amended complaint also states that, on or about November 1, 1960, as a result of dealings with the corporation, Robert A. Futterman and his wife acquired 181,464 shares of its Class A stock and 105,000 shares of Class B stock [1], the latter at a consideration of $1 per share. The corporation sold 660,000 shares of Class A stock to the public on July 19, 1960, at $12 a share and, on June 8, 1961, one million shares of Class A stock at $13.125 a share. Plaintiff alleges that the false and misleading statements and failure to disclose material facts caused the stock to sell at inflated prices up to at least early 1962. Damages for the class are alleged to be between $5 million and $25 million.

The Futterman estate argues that it should be dropped as a defendant because (1) any cause of action against Robert A. Futterman abated upon his death, and (2) the complaint contains no allegation of wrongdoing on the part of Robert A. Futterman personally or his executors.

## I

The estate contends that a cause of action abates when there is no unjust enrichment of the decedent or when the statute relied on for recovery is essentially "penal" in nature. Further, the executors argue that if there is unjust enrichment, recovery should be limited to that amount. Plaintiff contends that unjust enrichment is not the test of whether an action abates, and, in any event, claims that there is unjust enrichment in this case: the amount that the value of the stock owned by Robert A. Futterman was increased by the alleged misrepresentations and omissions.

1. Class B stock under certain conditions is convertible into Class A stock.

2. See 28 U.S.C. § 2404 providing for survivability where the Government is a party and the suit is for damages.

3. Rule 25, Fed.R.Civ.P., which provides for substitution of parties, states that

This action is based upon the Securities Act and the Exchange Act. These two statutes make no reference to survival, and there is no general federal statute concerning abatement of actions.[2] When a federal statute creates a cause of action, the courts generally have ruled that federal law determines whether the cause of action abates or survives upon death. E. g., Heikkila v. Barber, 308 F.2d 558, 561 (9 Cir. 1962); Cinnamon v. Abner A. Wolf, Inc., 215 F.Supp. 833 (E.D.Mich.1963); Armstrong v. Emerson Radio & Phonograph Corp., 132 F.Supp. 176 (S.D.N.Y.1955); but compare Pritchard v. Smith, 289 F.2d 153, 88 A.L.R.2d 1146 (8 Cir. 1961); Brazier v. Cherry, 293 F.2d 401 (5 Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed. 2d 136 (1961). Thus, whether an action based on the two federal statutes involved here abates upon death is to be determined on federal common law principles.[3] Kirk v. Comm'r, 179 F.2d 619, 15 A.L.R. 2d 1031 (1 Cir. 1950); Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 128 F.2d 645 (4 Cir. 1942); Armstrong v. Allen B. Dumont Labs., 137 F.Supp. 659 (D.Del. 1955).

The common law treatment of abatement of actions on the death of a tortfeasor is an illustration of the growth and change of law. At one time all tort actions abated. This was perhaps attributable to early notions of a tort as an outgrowth of a criminal wrong and the consequent view that punishment or blame could not survive death. Winfield, Death as Affecting Liability in Tort, 29 Colum. L.Rev. 237, 241–50 (1929). After a fourteenth century statute [4] and subsequent judicial gloss over hundreds of years, a differentiation between those torts affecting property rights and those affecting the person alone was made. If the injury upon which the

the court may order substitution if a party dies and "the claim is not thereby extinguished * * *."

4. Statute de Bonis Asportatis in Vita Testatoris, 1330, 4 Edw. III, c. 7.

cause of action was based affected property rights, it survived; if it affected the person alone, such as assault and battery or false imprisonment, it abated. Heikkila v. Barber, supra; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, supra; Sullivan v. Associated Billposters & Distribs., 6 F.2d 1000, 1004-05, 42 A.L.R. 503 (2 Cir. 1925). If the suit was brought against the estate of the tortfeasor, the common law at one time imposed an additional requirement: the plaintiff must seek to recover property, or the proceeds or value of property appropriated by the decedent and added to his estate. Thus, in a suit against the executors of a deceased marshal for damages resulting from the filing of false returns by his deputy, the Court stated:

> "If the person charged has secured no benefit to himself at the expense of the sufferer, the cause of action is said not to survive; but where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. * * * If the deputy marshal, in the misfeasance complained of, received money or property, the marshal being responsible for such acts, the cause of action survived against his executors."

United States v. Daniel, 6 How. 11, 13, 47 U.S. 11, 13, 12 L.Ed. 323 (1848). See Iron Gate Bank v. Brady, 184 U.S. 665, 22 S.Ct. 529, 46 L.Ed. 739 (1902); Kirk v. Comm'r, 179 F.2d 619, 15 A.L.R. 2d 1031 (1 Cir. 1950). Thus, it was not sufficient to prevent an action from abating that the deceased caused plaintiff's property to be diminished. There also had to be a corresponding benefit to the deceased.

Two cases decided by the Second Circuit dealt with the concept of benefit in this context, United Copper Sec. Co. v. Amalg. Copper Co., 232 F. 574 (2 Cir. 1916) and Sullivan v. Associated Billposters & Distribs., 6 F.2d 1000, 42 A.L.R. 503 (2 Cir. 1925). In United Copper, it was held that a cause of action under the Sherman Act would not survive unless the decedent secured some benefit at the expense of the person wronged. However, whether there was a benefit and the nature of the benefit was left to be determined at trial.

Sullivan, some nine years later, was also a suit under the Sherman Act. Plaintiff there sought lost profits caused by an alleged conspiracy of defendants. One defendant died during the suit, and plaintiff moved to substitute the estate as a party defendant. Judge Learned Hand, then sitting in the District Court, denied the motion. He stated that the United Copper case "did no more than follow the existing law" and that "where no definite property has passed to the tort feasor I can find no suggestion anywhere that the cause of action survives."[5] The Court of Appeals reversed. It found sufficient a claim that profits had been diverted to the tortfeasor from plaintiff's business on the ground that under the Sherman Act a claim of damage to one's business, rather than to one's property, survives a defendant's death. The Court reached this result even though it recognized that the action would not have survived under the orthodox property benefit rule because no property had passed from plaintiff to the decedent. Sullivan v. Associated Billposters & Distribs., supra, 6 F.2d at 1011-12, 42 A.L.R. 503. See Moore v. Backus, 78 F.2d 571, 101 A.L.R. 379 (7 Cir.), cert. denied, 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455 (1935).

Since these decisions, other cases have marked a departure from the rule that a benefit to the tortfeasor is necessary in order for a cause of action to survive against his estate. This is particularly true in cases involving deficiency additions under the internal revenue laws. In Kirk v. Comm'r, supra, the Government sued for a fifty per cent addition to a tax deficiency because of fraud in the filing of a tax return. The estate of the deceased taxpayer argued that the action

---

5. Record on Appeal, Sullivan v. Associated Billposters & Distribs., supra, at p. 46.

did not survive as to the fifty per cent addition, because, even though the Government had been wronged, there was no corresponding benefit to the taxpayer's estate. The Court of Appeals for the First Circuit held that a benefit to defendant's estate was not necessary to avoid abatement. It based its decision on general principles and not on the fact that the case involved the revenue laws, stating (179 F.2d at 621, 15 A.L.R.2d 1031):

> "[W]e are satisfied that the modern rule as to the survival of tort actions against decedents' estates is that although actions to recover penalties do not survive, actions to recover compensation for monetary losses or injuries inflicted by a decedent do, without regard to any enrichment of the decedent's estate.

> \* \* \*

> "In the second place we feel at liberty to abandon enrichment of a decedent's estate as any criterion of survivability in cases like this because it is evident from the cases cited last above, and those cited therein, that the enrichment concept of the early law of survival was the product of archaic legal preconceptions identifying the representative personally with the estate in his charge which have little or no place in the law today, and the law of survival is not static but dynamic, capable of growth and development to meet present-day needs in conformity with modern concepts. Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645. In short, we think the general rule today with respect to the survival of tort actions against decedents' estates is that actions essentially for penalties do not survive for the reason that a decedent is beyond punish-

ment, but that actions to recompense or compensate a plaintiff for a harm inflicted upon him by a decedent do survive, for an estate can, and we think should, compensate for injury to the same extent as the decedent had he lived."

The Kirk decision has been accepted by a number of other Circuits. Estate of Rau v. Comm'r, 301 F.2d 51 (9 Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962) (two grounds are mentioned: the absence of the need for a benefit to the estate, and the importance of taxes to the Government); Lee v. Comm'r, 227 F.2d 181 (5 Cir. 1955), cert. denied, 351 U.S. 982, 76 S.Ct. 1048, 100 L.Ed 1497 (1956) (without discussion of the benefit rule); Reimer's Estate v. Comm'r, 180 F.2d 159 (6 Cir. 1950) (the Kirk decision was cited without discussion).

This Circuit has also accepted the Kirk decision. Scadron's Estate v. Comm'r, 212 F.2d 188 (2 Cir.), cert. denied, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954). It was there argued that the Kirk and Reimer cases discarded the benefit rule, were contrary to the Sullivan case,[6] and should not be followed. Nevertheless, the Court *per curiam* said "[t]he filing of a fraudulent return by the deceased taxpayer for each of the taxable periods was amply proved and the decision of the Tax Court is affirmed on the authority of Kirk v. Commissioner, 1 Cir., 179 F.2d 619 [15 A.L.R.2d 1031], and Reimer's Estate v. Commissioner, 6 Cir., 180 F.2d 159."

More recently, Judge Levet of this Court, in Banana Distribs., Inc. v. United Fruit Co., 27 F.R.D. 403 (S.D.N.Y.1961), squarely held that an antitrust action survives when there has been injury to plaintiff, but no allegation of benefit or enrichment to defendant.[7] That case was a private antitrust action for treble damages, alleging both loss of profits and the decreased capital value of plaintiff's

---

6. Reply Brief for Petitioner on Review, Scadron's Estate v. Comm'r, supra, at p. 7.

7. Leave to file an interlocutory appeal under 28 U.S.C. § 1292(b) was granted, but the Circuit Court refused to hear the appeal.

business. The estate of the deceased president of the corporate defendant opposed, on the basis of United Copper and Sullivan, its substitution as defendant. There was no allegation that the corporate officer personally benefited from the alleged wrongs. In holding that the law had gone beyond the United Copper and Sullivan cases (although in the same liberalizing direction as the latter), the Court noted the lapse of time since they were decided, a new liberal trend to survivability as represented by the Kirk case, and the approving recognition by the Supreme Court[8] of the growing tendency of state law toward survival of causes of action against deceased tortfeasors.

■ The law in this Circuit on whether a benefit to a decedent is necessary for a cause of action against the decedent to survive is not clear. Contributing to the uncertainty are the length of time since the decisions in United Copper and Sullivan, the difficulty of assessing the full implications of Sullivan, the acceptance by the Court of Appeals in Scadron's Estate v. Comm'r, supra, of the Kirk decision, which explicitly held that the benefit rule was no longer the criterion of survivability, and the modern trend of decision in favor of survivability. The duty of the District Court to its Circuit Court of Appeals includes, where appropriate, anticipation of changed thinking by the appellate court. See Banana Distribs., Inc. v. United Fruit Co., supra, 27 F.R.D. at 414–15. I believe this to be such a case to the extent that the changed thinking has not been made explicit. Upon balancing the interests of prospective heirs and of a plaintiff who would be compensated for his injuries but for the death of the tortfeasor, I conclude that the action here under the federal securities acts survives, even if there was no benefit to the decedent. The other rule was a product of archaic legal thinking[9] inconsistent with modern notions of the basis of tort liability. Kirk v. Comm'r, supra.

■ As further support for its position that the action against Futterman has abated, the estate urges that the action is "penal" in nature. The courts have held that if an action is "penal" rather than "remedial," it abates at death, although what is and what is not penal in this connection is not always clear. See Survival of Actions Brought Under Federal Statutes, 63 Colum.L.Rev. 290, 300–03 (1963). The estate cites Wogahn v. Stevens, 236 Wis. 122, 294 N.W. 503, 133 A.L.R. 1033 (1940) for the proposition that the action in this case is penal.[10]

The Wogahn case was a suit under Section 11 of the Securities Act by a trustee to whom claims of purchasers of common stock had been assigned. The court characterized liability under Section 11 as penal. It concluded, therefore, that an action based upon this section would not survive the death of a plaintiff and consequently was not assignable. Accordingly, it affirmed dismissal of the complaint. The estate argues that this case presents an even stronger situation for characterization of the action as penal rather than remedial. It points out that Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act do not explicitly create civil liability (as did Section 11 in the Wogahn case), but clearly do create criminal liability for violations thereof.

Two District Courts have rejected the Wogahn decision. Mills v. Sarjem Corp., 133 F.Supp. 753 (D.N.J.1955) was a

8. See Cox v. Roth, 348 U.S. 207, 210, 75 S.Ct. 242, 99 L.Ed. 260 (1955) (holding that an action under the Jones Act survives against the deceased tortfeasor).

9. Cf. Sperbeck v. A. L. Burbank & Co., 190 F.2d 449, 450 (2 Cir. 1951).

10. The estate also cites Martin v. Hull, 67 App.D.C. 284, 92 F.2d 208 (1937),

a suit under § 11 of the Securities Act, 15 U.S.C. § 77k, in which there is a statement that the suit abated as to one of the defendants upon his death. The opinion, however, does not disclose the basis for the abatement.

suit for profits allegedly made in violation of Section 10(b) of the Exchange Act (one of the bases of the action in this case) in which the executor of a deceased plaintiff sought substitution. After noting the Wogahn decision, the Court said (133 F.Supp. at 761–62):

"It is further contended by these defendants that the action is penal in nature and as such cannot survive the death of a party thereto. However, 15 U.S.C.A. § 78bb clearly limits recovery under any section of the 1934 Securities Exchange Act to the actual damages sustained by a plaintiff. This relief appears to be remedial and actions for similar damages have been held to be assignable and capable of survival. See Auslen v. Thompson, 1940, 38 Cal. App.2d 204, 101 P.2d 136; Spiller v. Atchison, Topeka & Santa Fe Ry. Co., 1920, 253 U.S. 117, 135, 40 S.Ct. 466, 64 L.Ed. 810."

This language was quoted with approval by Judge Dimock of this Court in holding assignable causes of action under the same statutory provisions involved in the instant case. International Ladies' Garment Workers' Union v. Shields & Co., 209 F.Supp. 145, 149 (S.D.N.Y. 1962). See also Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 206 (5 Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); Shonts v. Hirliman, 28 F.Supp. 478, 482 (S.D.Cal.1939). But see Knapp v. Kinsey, 249 F.2d 797, 804 (6 Cir. 1957), cert. denied, 356 U.S. 936, 78 S.Ct. 778, 2 L.Ed.2d 812 (1958).

The use of labels such as "penal" or "remedial" is, of course, unsatisfactory unless it is recognized as a shorthand way of expressing relevant considerations. Quite clearly the statutes relied on here are meant to deter bad practices in the sale of securities, as well as to afford compensation to persons injured thereby. Judge McGohey of this Court, in an analagous situation, made the common sense observation that an inquiry as to whether such a statute is penal or remedial seems bound to result in the conclusion that it is both.[11] Damages in an action under Section 10(b) of the Exchange Act are clearly limited to the loss incurred by plaintiff,[12] and, in any event, the complaint, which invokes that section and Section 17(a) of the Securities Act, seeks only actual damages (Amended Complaint, paras. 26, 27). The action is analogous to the private antitrust suit held to be remedial for purposes of survival in the Sullivan case. Cf. Armstrong v. Emerson Radio & Phonograph Corp., 132 F.Supp. 176, 179 (S.D.N.Y.1955) (characterizing even multiple damages under the Patent Act as "inherently remedial" even though "in some aspects punitive."). Since the Congressional policy is, in part at least, an attempt to recompense defrauded purchasers of stock, this purpose is furthered by a liberal rule of survival under the securities acts. Therefore, policy, as well as precedent, justifies application of the "remedial" label.

Accordingly, the estate's motion to dismiss on the ground that the action against it has abated is denied. In view of the holding that benefit to the decedent from the alleged fraud need not be shown to prevent abatement, there is no need to rule on plaintiff's contention (which may, indeed, have some force) that there was such benefit to the extent of the increased value of decedent's shares of stock in the corporation.[13]

11. Epstein v. Shindler, 200 F.Supp. 836, 837 (S.D.N.Y.1961) (suit against a deceased "insider" under § 16(b) of the Exchange Act to recover short term profits).

12. Section 28 of the Exchange Act, 15 U.S.C. § 78bb; Meisel v. No. Jersey Trust Co., 216 F.Supp. 469 (S.D.N.Y. 1963).

13. The estate concedes that if Robert A. Futterman personally sold his substantial stock interest at the inflated price levels, this would be sufficient benefit under the traditional rule. Amended Memorandum of Executors, p. 14. There is no such allegation in the complaint. It may be, however, that benefit is sufficiently shown by an increase in the val-

## II

█ The estate also claims that the complaint should be dismissed as to it because no claim is stated against Robert A. Futterman personally. Essentially its argument is as follows: plaintiff alleges that defendants either authorized, knew, or should have known, in the exercise of reasonable care, of the false statements and since Robert A. Futterman is not a defendant—only his estate is—no claim is made against Robert A. Futterman.[14] This argument, which apparently is an afterthought,[15] is over technical. It is perfectly evident from a reading of the amended complaint that plaintiff indicates that Robert A. Futterman, while he was alive, was a party to the making of certain false statements. However, since the complaint will have to be amended again to incorporate other rulings of the Court,[16] the amended complaint should aver that Robert A. Futterman personally authorized, knew, or should have known of their falsity.

Accordingly, the estate's motion to dismiss the complaint as to it is denied. Settle order on notice incorporating the rulings on the other motions heard at the same time and not heretofore set forth in formal orders of the Court.

ue of decedent's stock, even though the stock was not sold at the inflated value and the price of the stock (and, therefore, the value) subsequently declined.

14. Amended Memorandum of Executors, pp. 5–7.

15. The original notice of motion dated June 27, 1963, and brief dated June 28, 1963, made no mention of this argument. It first appeared in the amended notice of motion dated July 2, 1963.

16. Motions were made by plaintiff under Rule 34 for production of documents, and by defendants to strike the allegation that the suit was brought as a class action and for a more definite statement. These motions have already been disposed of.