**CONTINENTAL ASSURANCE COMPANY, Plaintiff,**

v.

**AMERICAN BANKSHARES CORPORATION et al., Defendants.**

No. 76–C–248.

United States District Court, E. D. Wisconsin.

Jan. 16, 1980.

failure to assume its obligations under the policy for which Price prays for $350,000 in punitive damages.

Irvin B. Charne, Howard A. Pollack, Milwaukee, Wis., Harding A. Orren, Richard L. Voelbel, Robbins, Davis & Lyons, Minneapolis, Minn., for plaintiffs.

William H. Alverson, Godfrey & Kahn, Milwaukee, Wis., for Ernst & Ernst.

Robert E. Hackett, Jr., Milwaukee, Wis., for Trecker.

Gregory J. Harrold, Milwaukee, Wis., for Erickson.

Dominic S. Amato, Joseph F. Wresching, Milwaukee, Wis., for Wiersdma.

Ronald L. Wallenfang, Quarles & Brady, Milwaukee, Wis., for Deshur, Heifetz, Korpady, Lauterbach, Lesselyoung, Lichtsinn, Pearce, Colburn, Bruce, DeBelak and Schwingle.

Richard L. Cates, John C. Carlson, Madison, Wis., for Cahill.

David J. Cannon, Glenn A. Buse, Michael, Best & Friedrich, Milwaukee, Wis., for Wegmann.

Reuben W. Peterson, Jr., Milwaukee, Wis., for Colonial Bank.

David E. Leichtfuss, Walter S. Davis, Clifford B. Buelow, Milwaukee, Wis., for Benz and Wright.

William J. French, Milwaukee, Wis., for FDIC.

James Gordon, Chicago, Ill., for Colonial Bank.

John D. Bird, Jr., Milwaukee, Wis., for Scroggins and Rodi.

Michael A. Campbell, Donald A. Sands, Milwaukee, Wis., for Zuckerman.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The death of defendant Clement J. Schwingle was suggested upon the record on April 9, 1979 and pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, plaintiff has moved to substitute the co-personal representatives of Schwingle's estate, Southeast Banks Trust Company, N.A. and Pearl Manley Schwingle (the representatives). The representatives oppose the motion claiming that plaintiff's claims did not survive Mr. Schwingle's death. Furthermore, the representatives argue that even if the claims survive Schwingle's death, substitution must be denied because the claim against the estate, under the law of the state where Schwingle's estate is being administered, was not perfected.

Although addressed last in the representatives' letter brief, the first question that will be considered is the effect of the estate law of Florida, the state where Schwingle's estate is being administered. Under Florida law, a claim was filed against the estate, but the representatives objected to the claim. The representatives argue that in order to perfect its claim against the estate, plaintiff had to file an independent action. Fla.Stat. § 733.705(3) (1977); *Estate of Pridgeon*, 349 So.2d 741 (Fla.App.1977). *See Estate of Fornash*, 372 So.2d 128 (Fla.

App.1979). While Florida may not honor the judgment because the requirements of section 733.705(3) were not met, the law simply is unclear as to whether a court in passing on a motion under rule 25(a)(1) should take this factor into consideration. 7A Wright & Miller, Federal Practice & Procedure § 1952 at 649 (1972). Two courts have held that the question of whether a judgment will be honored need not be reached by the district court on a rule 25 motion, but instead by the probate court when the judgment is presented. *Ransom v. Brennan*, 437 F.2d 513 (5th Cir. 1971); *Downie v. Pritchard*, 309 F.2d 634 (1962).

Notwithstanding the representatives' reliance on Florida estate law, this Court need not decide the question of whether the Florida probate court will or will not honor a judgment obtained in this litigation. Wright and Miller in their treatise suggest that substitution is proper even though the claim against the estate is not adequately perfected. 7A Wright & Miller, § 1952 at 649. This suggestion appears reasonable. Whether a judgment is collectible is not a question with which this Court on a rule 25(a) motion should concern itself. Instead, the primary issue raised by plaintiff's motion is whether the claims survive Mr. Schwingle's death.

▌ Under rule 25(a), if a right of action survives the death of a party, "the court may order substitution of the proper par-. ties." *See* 7A Wright & Miller, § 1952 at 641. The question of whether an action survives the death of a party must be determined by looking towards the law, state or federal, under which the cause of action arose. *Roberson v. N. V. Stoomvaart Maatschappij*, 507 F.2d 994 (5th Cir. 1975); *Ransom v. Brennan*, 437 F.2d 513 (5th Cir. 1971); 3B J. Moore, Moore's Federal Practice ¶ 25.06[3] (1979). The claims pending against Schwingle at the time of his death included those asserting violations of section 10(b) of the Securities Exchange Act of 1934, Rule 10b–(5) promulgated under the 1934 Act, Section 17(a) of the Securities Act of 1933, the Wisconsin Uniform Securities Act §§ 551.41 and 551.59, Wis.Stat., and the Wisconsin common law of fraud.

The question of whether claims arising under the federal securities laws survive death was considered in *Derdiarian v. Futterman Corp.*, 223 F.Supp. 265 (S.D.N.Y. 1963). There the court, after exhaustively reviewing the law of survivability of claims, held that actions arising under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act survive the death of the defendant. Before so ruling, the court overcame two rules of law which could have prevented the securities claims from surviving.

In *United States v. Daniel*, 47 U.S. 11, 13, 6 How. 11, 12 L.Ed. 323 (1848), the Court held that an action for damages against a defendant does not survive the defendant's death where he did not benefit, despite the injury to the plaintiff. The court in *Derdiarian* recognized the holding in *Daniel*, but declined to follow that opinion. By looking at trends in the law since *Daniel*, the Court found that the benefit rule "was a product of archaic legal thinking inconsistent with modern notions of the basis of tort liability." *Derdiarian*, 223 F.Supp. at 270.

In discerning a trend away from the benefit rule, the Court first looked towards cases involving the internal revenue laws. Several courts have held that the estate need not have received a benefit in order for the claim to survive. *See, e. g., Rau v. Comm'r*, 301 F.2d 51 (9th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962); *Lee v. Comm'r*, 227 F.2d 181 (5th Cir. 1955), *cert. denied*, 351 U.S. 982, 76 S.Ct. 1048, 100 L.Ed. 1497 (1956); *Scadron's Estate v. Comm'r*, 212 F.2d 188 (2d Cir.), *cert. denied*, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954); *Reimer's Estate v. Comm'r*, 180 F.2d 159 (6th Cir. 1950); *Kirk v. Comm'r*, 179 F.2d 619 (1st Cir. 1950). Secondly, the court examined *Banana Distributors, Inc. v. United Fruit Co.*, 27 F.R.D. 403 (S.D.N.Y.1961) which held that an antitrust claim survives even though there was no allegation of benefit to the wrongdoer.

After determining that the benefit rule was not a bar to the survivability of the securities laws claims, the *Derdiarian* court next turned to the question of whether

those claims do not survive because they are penal in nature. While compensatory actions generally survive, penal actions do not. 7A Wright & Miller, *supra*, § 1954 at 654. Interestingly, the court in *Derdiarian* initially looked toward a Wisconsin decision to determine if the securities claims were "penal" in nature.

In *Wogahn v. Stevens*, 236 Wis. 122, 294 N.W. 503 (1940), the court held that a suit under section 11 of the 1933 Act is penal and thus does not survive. Two cases held *Wogahn* in error because recovery under the securities laws is limited to damages and thus appears to be remedial. *Mills v. Sarjem Corp.*, 133 F.Supp. 753 (D.N.J.1955); *International Ladies Garment Workers' Union v. Shields & Co.*, 209 F.Supp. 145 (S.D.N.Y.1962). The court in *Derdiarian* held that this precedent plus the Congressional policy of compensating defrauded purchases of securities, indicates that the federal securities laws are "remedial."

■ Without elaborating, the representatives argue that *Derdiarian* was in error and that the rule in *Daniel* and the "penal" label survive. After careful consideration, this Court will follow *Derdiarian* and therefore hold that plaintiff's federal securities laws claims survive. The review of the law undertaken by the *Derdiarian* court indicates a clear trend away from the rule espoused in *Daniel*. Furthermore, the Supreme Court itself in *Cox v. Roth*, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1955), recognized that the common law had evolved to permit survival of causes of action against deceased tortfeasors. Finally, the nature of the relief available is remedial rather than penal.

Turning now to the question of whether plaintiff's state law claims survive, the Court is again confronted with *Wogahn v. Stevens, supra*. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), if *Wogahn* is still viable and applicable, then this Court must hold that plaintiff's state law claims do not survive Mr. Schwingle's demise.

There is little dispute by plaintiff that *Wogahn* is applicable. The Wisconsin securities sections, Wis.Stat. §§ 551.41 and 551.-59, are very similar to several of the federal statutes, and therefore the Wisconsin Supreme Court would most likely interpret their statutes similarly to the way it interpreted section 11 of the 1933 Act. As to the fraud claims, since these essentially arise out of the alleged securities fraud, the Supreme Court of Wisconsin should likewise apply the reasoning of *Wogahn* to those claims.

The question, then, is whether *Wogahn* is still viable. This Court need not follow *Wogahn* if "it can be said with some assurance that the [state] Supreme Court will not follow [it] in the future." *Meredith v. Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). As indicated earlier, several courts have held that *Wogahn* was in error. While certainly not binding, these courts are of some assistance in a resolution of whether *Wogahn* remains the law in Wisconsin.

Of equal assistance is the Wisconsin Supreme Court's interpretation of the nature of a fraud claim in *Nichols v. United States Fidelity & Guaranty Co.*, 37 Wis.2d 238, 155 N.W.2d 104 (1967). There the court held that an insured's claim of fraud for the insurer's bad faith settling of a claim survived the insured's bankruptcy because the estate is reduced by the fraud. While not directly applicable, *Nichols* indicates the direction of the court.

A final element in the formula is the Wisconsin survival statute, Wis.Stat. § 895.-01(1), which provides in part "In addition to the causes of action which survive at common law the following shall also survive: Causes of action . . . for all damage done to the property rights or interests of another, . . . ." The meaning of this phrase has been interpreted in *Howard v. Lunaburg*, 192 Wis. 507, 213 N.W. 301 (1927), where the court held: "By property rights or interests was undoubtedly meant a right or interest of value that could be parted with for some pecuniary consideration, or, if lost or impaired, would pecuniarily diminish the estate of plaintiff." The loss to plaintiff caused by Schwingle's al-

leged wrongdoing falls within this definition. It is important to note that in *Wogahn* the court was considering federal law and thus section 895.01(1) had no applicability.

In light of the above, this Court finds that claims arising under Wisconsin securities laws and causes of action for common law securities fraud survive the death of the wrongdoer. Thus, plaintiff's state law claims survive Mr. Schwingle's death.

Therefore, plaintiff's motion for a substitution of defendants in place of defendant Clement J. Schwingle must be and hereby is GRANTED.