Walter S. NEUMANN and Toba G. Neumann, Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, a Massachusetts Insurance Corporation, Alan M. Misale, John W. Jones, Carl J. Santolli, Profesco Corporation, a New York Corporation, Defendants.

No. 86 C 5844.

United States District Court, N.D. Illinois, E.D.

April 30, 1990.

Arnold M. Flank, Arnold M. Flank, Ltd., and Martin J. Rubin, Schwartz & Rubin, Chicago, Ill., for plaintiffs.

J. Robert Geiman, Daina B. Van Dervort and William A. Chittenden, III, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for John Hancock Mut. Life Ins. Co.

Don W. Fowler and Barbara A. McDonald, Lord, Bissell & Brook and David M. Agnew, and Patricia A. Giannis McKay, Chicago, Ill., for Alan Misale, John Jones and Carl Santolli.

Michael G. Boylan, Michael G. Boylan, P.C., Geneva, Ill., for John Jones.

ORDER

NORGLE, District Judge.

Before the Court are the Magistrate's Report and Recommendation that this Court grant Defendants' Motion to Dismiss Count XI of Plaintiffs' Amended Complaint and grant Plaintiffs' Motion to Substitute, as to Counts I–III, V, VI, VII, VIII, and IX. The respective parties have filed timely objections to the Magistrate's Report and Recommendation as to both motions. Since the Magistrate's recommendation concerns claim dispositive motions, this court reviews the Magistrate's Report and Recommendation *de novo*, pursuant to Fed.R. Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C).

Upon conducting a *de novo* review, the Court, for the reasons set forth below, accepts the Report and Recommendation of the Magistrate and grants both the Defendants' Motion to Dismiss and the Plaintiffs' Motion to Substitute.

## MOTION TO DISMISS

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *See Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which the claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir. 1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 307 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986).

These allegations of the complaint are relevant to the motion to dismiss. During the summer of 1982, Alan Misale, an employee of Hancock and an employee of Hancock general agent John W. Jones, offered the plaintiffs this four-component investment:

1) a $200,000.00 whole life insurance policy (the "New Policy") to be issued by Hancock, having an annual premium of $16,744.38;

2) one or more variable life annuity contracts (the "Annuity") to be issued by Hancock or one of its wholly owned subsidiaries, which required an investment by plaintiffs of approximately $35,500.00;

3) a limited partnership interest in Damson Oil and Gas income fund—1983 (the "O & G Fund") which required an aggregate investment by plaintiffs of $51,-000.00; and

4) a loan in the amount of $50,234.25 (the "Premium Loan") from Profesco Corporation ("Profesco"), an amount equal to the premiums required to be paid on the New Policy during the first three years it was to be issued.

Plaintiffs' Complaint at 6–7.

Misale persuaded Walter S. Neumann and Toba G. Neumann to cash in their old life insurance policy in order to make these investments. Misale represented that only an initial investment by plaintiffs was required, since the increase in the cash surrender value of the New Policy, plus the earnings on the Annuity and O & G Fund, would be sufficient to pay all premiums of the New Policy. However, Misale made certain omissions of material facts that caused plaintiffs to purchase the alleged "security," with the knowledge and consent of Hancock, Profesco, and Jones. When the value of the plaintiffs' investments decreased due to market conditions, they brought this suit to recover their losses.

The plaintiffs' complaint initially alleged claims against defendants, John Hancock Mutual Life Insurance, a Massachusetts Insurance Corporation ("Hancock"), Alan M. Misale, John W. Jones, Carl J. Santolli and Profesco Corporation, for violations of federal and state securities laws, RICO, the Illinois Consumer Fraud Act and Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½ ¶¶ 261–272 ("Consumer Fraud Act"), common law fraud and negligent misrepresentation. The Neumanns had also sought to maintain an action on the behalf of a class of persons or entities similarly situated. However, on December 2, 1988, this Court struck the Neumanns' class allegations, as well as dismissed Count IV, which alleged a violation of Section 12(2) of the 1933 Securities Act, and Count X, which alleged a violation of RICO. *Neumann v. John Hancock Mutual Life Insurance Co.,* No. 86 C 5844, slip op. at 16 (N.D.Ill. Dec. 2, 1988).

Defendants move to dismiss Count XI which alleges a violation of the Consumer Fraud Act. The Neumanns allege that the

defendants' business activities constitute the conduct of a trade or commerce, in the state of Illinois as that term is defined in the Consumer Fraud Act. Count XI ¶ 36. They further allege that the "security" describe above constitutes "merchandise" as defined by the Consumer Fraud Act. They also allege that the sales of, and offers to sell, the security described above occurred within the three-year statute of limitations that governs the Consumer Fraud Act. The Neumanns seek their actual damages incurred as a result of their purchase of the security, together with interest, attorney's fees and costs.

■ The defendants contend that a plaintiff seeking relief under the Consumer Fraud Act must plead and prove that a violation of the Consumer Fraud Act caused a public injury—something plaintiffs have not and cannot do. The defendants argue that, at most, the acts of the defendants resulted in a purely private injury to the plaintiffs individually and did not affect the consuming public generally.

The Magistrate rejected the defendants' contention that a cause of action under the Consumer Fraud Act requires an allegation of public injury. However, the Magistrate concluded that the Consumer Fraud Act is not intended to extend to every transaction between contracting parties, or to be completely open-ended. Thus even though courts have not required an allegation of "public injury," application of the Consumer Fraud Act is restricted to conduct that "affect[s] consumers generally." *See* Magistrate's Report and Recommendation at 4.

Although the Illinois Supreme Court has not directly addressed this question, the general trend of authority in both the Illinois Appellate Courts and in the Northern District of Illinois is in accord with this interpretation. *See, e.g., Bonfield v. AAMCO Transmissions, Inc.,* 708 F.Supp. 867 (N.D.Ill.1989); *Maduff v. Life Insurance Company of Virginia,* 657 F.Supp. 437 (N.D.Ill.1987); *Blake v. State Farm Mutual Automobile Insurance Company,* 168 Ill.App.3d 918, 119 Ill.Dec. 617, 523 N.E.2d 85 (1st Dist.1988); *Beaton and Associates v. Joslyn Manufacturing & Supply Company,* 159 Ill.App.3d 834, 111 Ill.Dec. 649, 512 N.E.2d 1286 (1st Dist.1987) (the Consumer Fraud Act is not intended to provide a redundant remedy to redress a private wrong). *Century Universal Enterprises, Inc. v. Triana Development Corporation,* 158 Ill.App.3d 182, 110 Ill.Dec. 229, 510 N.E.2d 1260 (2d Dist.1987); *Exchange National Bank v. Farm Bureau Life Insurance Co. of Michigan,* 108 Ill.App.3d 212, 63 Ill.Dec. 884, 438 N.E.2d 1247 (3d Dist. 1982) (one does not need to allege a public injury to recover under the Consumer Fraud Act).

In *Blake,* the plaintiff attacked the entire notification procedure used by the defendant to inform new policyholders that underinsured motorist insurance coverage was available. 168 Ill.App.3d at 924, 119 Ill.Dec. at 621, 523 N.E.2d at 89. The *Blake* court stated that the intent of the Consumer Fraud Act was not to extend to wrongs committed in the context of private transactions, but rather addressed wrongs committed in the course of business or trade. *Id.* The court reasoned that there might have been a sufficient showing of a course of business or trade to state a claim under the Consumer Fraud Act if the case were sustainable as a class action. *Id.* However, since the trial court had properly dismissed the class action allegations, the court dismissed the plaintiff's allegation of a violation of the Consumer Fraud Act. *Id.; see also Newman–Green, Inc. v. Alfonzo–Larrain,* 590 F.Supp. 1083, 1086 (N.D.Ill.1984).

Here, as in *Blake,* there might have been a sufficient showing of course of business or trade to state a claim under the Consumer Fraud Act if the case were sustainable as a class action. However, just as in *Blake,* once the class action allegations were dismissed, any basis for such a showing is eliminated.

■ Furthermore, in line with the general trend of authority which holds that the Consumer Fraud Act does not address private wrongs, the one-to-one transaction between the plaintiffs and defendants does not result in a public injury. The transaction that took place between the parties in

this case relates to a specific investment made by the plaintiffs based on the alleged misrepresentations and omissions made in individualized consultations. The Consumer Fraud Act does not address, nor was it intended to extend to, such private transactions. Obviously, if one has a public injury, it affects consumers generally. On the other hand, if one does not have a public injury, the conduct in question may still be such that it affects consumers generally. However, a single course of conduct by a defendant toward a plaintiff is not enough to impose liability under the Consumer Fraud Act because consumers are not affected generally.

If the plaintiffs were allowed to allege a violation of the Consumer Fraud Act in a controversy involving an isolated act, they would effectively supplant Illinois common law of contracts and fraud. As the court in *Exchange National Bank,* stated:

> Every individual breach of contract between two parties does not amount to a cause of action cognizable under the [Consumer Fraud] Act. If it did, common law breach of contract actions would be supplemented in every case with an additional and redundant remedy. Such is not the intention of the Consumer Fraud Act.

108 Ill.App.3d at 216, 63 Ill.Dec. at 887, 438 N.E.2d at 1250.

Accordingly, the Court accepts the Magistrate's recommendation that Defendants' Motion to Dismiss Count XI of Plaintiffs' Amended Complaint be granted.

## MOTION TO SUBSTITUTE

Jones was a named defendant on the basis that Alan Misale was allegedly an employee, independent contractor, or subagent of Jones when Misale first met with the plaintiffs. Jones has died since this action was filed. After Jones' death was suggested of record on June 15, 1989, and pursuant to Fed.R.Civ.P. 25(a), the plaintiffs moved to substitute the Estate of John W. Jones, Nancy Jones, Executor, Case No. 89 P 60, Circuit Court of Kane County, Illinois, as a party defendant.

■ The Magistrate found that Counts I–III and V, which allege violations of federal securities laws, survive the death of the parties; that Count VIII, alleging common law fraud, survives the death of the parties; and that Count VI and VII, which allege violations of the Illinois Securities Act, survive the death of the parties.

Jones' estate objects on the grounds that, as plaintiffs' purported securities and negligence claims were extinguished upon Jones' death, substitution as to all counts is inappropriate. Plaintiffs respond that they have been damaged by a diminution in value of their assets as a result of an alleged illegal sale of securities. Accordingly, plaintiffs assert that such a cause of action survives the death of the defendant Jones and thus their Motion to Substitute should be granted.

■ Rule 25(a) of Federal Rules of Civil Procedure provides, in pertinent part, that the court may order the substitution of the appropriate parties only "if a party dies *and the claim is not thereby extinguished."* The question of whether an action survives the death of a party must be determined by looking towards the law, state or federal, under which the cause of action arose. *Continental Assurance Company v. American Bankshares Corporation,* 483 F.Supp. 175, 177 (E.D.Wis. 1980). If a right of action is federally created, federal law controls on the survival of the action. In a pendent claim where state law provides the rule of decision, state law is controlling on whether the claim survives. *See* 7C Wright, Miller and Kane, *Federal Practice and Procedure* § 1954 at 537.

The parties agree that in the absence of a federal statutory directive, the question of the survival of a federal statutory cause of action is a question of federal common law. *See generally Khan v. Grotnes Metalforming Systems, Inc.,* 679 F.Supp. 751, 756 (N.D.Ill.1988). Actions brought under the federal securities laws have consistently been held to survive the death of one of the parties. *Continental Assurance Co.,* 483 F.Supp. at 178; *see also First Interstate Bank of Nevada, N.A. v. National*

*Republic Bank of Chicago,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 91,994 at 90,932, 1985 WL 1118 (N.D.Ill. March 10, 1985); *Derdiarian v. Futterman Corp.,* 223 F.Supp. 265, 271 (S.D.N.Y. 1963); *Miller v. Alexander Grant & Co.,* [1971 Transfer Binder] ¶ 93,271 at 91,583 (E.D.N.Y. Nov. 4, 1971). Accordingly, Counts I–III and V of Plaintiffs' Amended Complaint which allege violations of federal securities laws survive the death of Jones.

■ Under Illinois law, whether plaintiffs' pendent Illinois state law counts abate or survive is governed by common law rules and by statutory provisions changing the common law. *Jordan v. Officer,* 170 Ill.App.3d 776, 787, 525 N.E.2d 1067, 1074, 121 Ill.Dec. 760, 767 (5th Dist. 1988); *see also Fireman's Fund Mortgage Corp. v. Zollicoffer,* 713 F.Supp. 1112, 1113 (N.D.Ill.1989).

Under Illinois common law, the death of either party abates a personal cause of action, but actions primarily based upon property rights survive. *Fireman's Fund Mortgage Corp.,* 713 F.Supp. at 1113. Statutory causes of action did not survive unless specifically declared to do so by the statute creating the cause of action or some other statute. *Id.* The legislature, however, supplemented this common law rule to allow the representative of the deceased to recover damages for certain other injuries to the deceased. *Id.* at 1113–14. In its current form, the Illinois Survival Act ("Survival Act") enumerates those actions which survive. It provides in part:

> In addition to the actions which survive by the common law, the following also survive: ..., actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, ... actions for fraud and deceit....

Ill.Rev.Stat., ch. 110½, ¶ 27–6 (1989 Supp.).

Counts VI and VII allege violations of the Illinois Security Act. Since these counts essentially seek rescission of the contracts for the sale of the allegedly unregistered and fraudulent securities, they primarily involve a property interest. *See*

*Caldwell v. Cole,* 326 Ill. 502, 504, 158 N.E. 159 (1927). Because these counts allege injury to personal property, they therefore fall within the scope of § 27–6 of the Illinois Survival Statute and do not abate. Moreover, plaintiffs' property claims would also survive under the common law. Count VIII, alleging common law fraud, also explicitly falls within the scope of the Illinois Survival Statute which provides that "actions fraud and deceit" survive. *Fireman's Fund Mortgage Corp.,* 713 F.Supp. at 1114. Accordingly, the Court accepts the Magistrate's recommendation to grant Plaintiffs' Motion to Substitute as to these counts.

## CONCLUSION

Defendants' Motion to Dismiss Count XI of Plaintiffs' Amended Complaint is granted. Plaintiffs' Motion to Substitute is granted as to the remaining Counts I–III, V, VI, VII, VIII, and IX.

IT IS SO ORDERED.