O'Dell vs. Burnham and wife, imp.

---

O'DELL vs. BURNHAM and wife, imp.

*November 12 — November 25, 1884.*

*(1, 2) Equity: Limitation of actions: Discovery of fraud. (3) Setting aside conveyance: Tender of money paid.*

1. The statute of limitations does not begin to run against an equitable action for relief on the ground of fraud until the aggrieved party has discovered the facts constituting the fraud or has information of such a nature as would impress a reasonable man with the belief that a fraud had been committed and would, upon diligent inquiry, lead to the discovery of the facts.

O'Dell vs. Burnham and wife, imp.

2. The complaint alleges that in April, 1874, the defendant, as the legal adviser of the plaintiff, fraudulently induced her to convey land to one N., his brother-in-law, for much less than its value; that a few days later N., by the defendant as his attorney, conveyed the land to one B., and that on the next day B. conveyed an undivided one-half thereof to the defendant; that the deeds from N. to B. and from B. to the defendant were not recorded until May, 1875; that the plaintiff first knew of said deeds in July, 1876, and then suspected that defendant had practiced some deceit upon her, and notified an attorney who made inquiries for N., and endeavored diligently to ascertain the facts; that said attorney found N. in September, 1882, and the plaintiff then first learned the truth in regard to her supposed sale to N., and N. then first learned of the conveyance to him and of his conveyance by attorney to B. *Held*, on demurrer, that the knowledge of the deeds from N. to B. and from B. to the defendant, acquired in July, 1876, did not set the statute of limitations running against the plaintiff.

3. Where in an action to set aside a conveyance on the ground of fraud the plaintiff offers in the complaint to return the money paid therefor, it can not be-objected on demurrer that the plaintiff did not before bringing the action tender back such money. The court can protect the rights of all parties, and the failure to make such tender can affect only the question of costs.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the facts alleged in the amended complaint was prepared by Mr. Justice Cassoday:

April 9, 1874, the plaintiff was the owner in fee and in possession of about twenty-nine acres of land, worth $30,000. She obtained her title to nineteen 52-100 acres of the same by a deed dated December 2, 1870, from *George Burnham*, and to nine 361-1000 acres of the same by a deed dated July 10, 1871, from *Burnham*, Rogers, and Becher. This property was clear of all incumbrances, except two mortgages to William E. Cramer, and was in the city of Milwaukee, and has increased so in value since April 9, 1874, that it is now worth $150,000.

The plaintiff is the widow of Galutia O'Dell, who died April 26, 1870, and who at the date of his death was the

owner in fee of the said twenty-nine acres of land. The defendant Rogers has been an attorney at law since 1870, and has since that date been thoroughly acquainted with the situation and value of these twenty-nine acres of land, and since the death of Galutia O'Dell (April 26, 1870) was the legal adviser of the plaintiff until after April 9, 1874, and had control of all the proceedings in the matter of the sale, settlement, and disposition of the estate of Galutia O'Dell.

The plaintiff, on October 22, 1872, borrowed $9,000 of William E. Cramer, and on May 6, 1873, the further sum of $1,400, both of which sums ($10,400) were secured by mortgages on these lands. The defendant Rogers, with intent to cheat and defraud the plaintiff, commenced suits on November 26, 1873, as attorney for W. E. Cramer, to foreclose the said two mortgages, and on January 26, 1874, caused judgments of foreclosure and sale to be entered, and on March 21, 1874, brought suit for one Hilgenberg on a due-bill for $328.25, and solicited and secured other claims for collection against the plaintiff, and threatened to bring suits on them, and advised the plaintiff to sell said lands as quickly as possible or she would lose them. The plaintiff, in March, 1874, became anxious to sell her lands, and sought purchasers, and received an offer from C. P. Larkin of $25,000, but Rogers dissuaded her from the sale by false representations, and the plaintiff left the sale of the property entirely to the judgment of said Rogers.

In April, 1874, Rogers represented to the plaintiff that he had found a purchaser, one Newkirk, who would pay $18,000, cash, and advised the plaintiff to accept the offer. The plaintiff, on April 9, 1874, when ill and suffering from nervous prostration, executed a deed which conveyed said lands to Howard Newkirk for the expressed consideration of $18,000. This deed was recorded April 13, 1874. The plaintiff left the disposition of the money received on the sale wholly to Rogers, as her attorney. Rogers paid her on

April 16, 1874, the sum of $1,500, and represented that the remainder of the money had been expended in the payment of the judgments and liens on her lands and her other debts. Howard Newkirk is a brother-in-law of Rogers, and is insolvent, and never furnished any money to purchase said lands, and did not know of the existence of the plaintiff or of her lands or of said deed until September, 1882. The entire indebtedness of the plaintiff did not exceed, on April 9, 1874, the sum of $12,500.

On April 14, 1874, Newkirk, by Rogers, his attorney, deeded said lands, for an expressed consideration of $18,000, to the defendant *Burnham*. The deed was recorded May 5, 1875. On April 15, 1874, *Burnham* deeded to Rogers an undivided one-half of the lands for the expressed consideration of $10,000. This deed was recorded May 10, 1875. Newkirk did not know of the deed to *Burnham* until September, 1882, and never received any consideration therefor. The deeds of Newkirk to *Burnham* and *Burnham* to Rogers were made and received by Rogers and *Burnham* for the purpose of defrauding the plaintiff out of her lands, and with a full knowledge on the part of *Burnham* of all the facts above alleged. Rogers did not pay the Cramer judgments of foreclosure, but on January 13, 1876, Cramer assigned them to *Burnham* and Rogers, and they are now unsatisfied of record.

The plaintiff first knew of the deeds of Newkirk to *Burnham* and *Burnham* to Rogers, in July, 1876, and then suspected that Rogers had practiced some deceit upon her in the pretended purchase of the lands by Newkirk, and then notified her attorney, J. C. McKenney, to make inquiries for Newkirk and endeavor to ascertain the facts in the matter; and McKenney made inquires for Newkirk and endeavored diligently to ascertain the facts in relation to the pretended purchase by Newkirk. McKenney found Newkirk in September, 1882, and then the plaintiff first learned the truth

in reference to the pretended purchase by Newkirk; and Newkirk, at that time, when informed by McKenney, first learned of the deeds of O'Dell to Newkirk, and Newkirk to *Burnham*, and thereupon, on September 30, 1882, gave plaintiff a release and quitclaim.

Rogers and *Burnham* have not made any permanent improvements on the land, nor expended any money on it except for taxes, and have not conveyed, but have received large sums for its use and occupation, but the amount is unknown to the plaintiff. Rogers and *Burnham* hold these lands as trustees for the plaintiff, but now claim and pretend that they are the owners. The other defendants have some interest in the property, but hold under Rogers and *Burnham*. The plaintiff has been defrauded of her rights by the fraudulent practices of Rogers, and by reason of the fraudulent and unfair advantage taken of her by Rogers while acting as her attorney.

The complaint prays judgment (1) for a cancellation of the deeds, O'Dell to Newkirk, Newkirk to *Burnham*, and *Burnham* to Rogers; (2) that Rogers and *Burnham* be compelled to convey the lands to the plaintiff, and account to her for the rents and profits; (3) that the amount paid by Rogers and *Burnham* to the plaintiff, and on her account, may be ascertained; and plaintiff offers to repay it.

To this amended complaint *George* and *Barbara Burnham* jointly demurred, on the grounds that it appeared upon the face thereof (1) that the amended complaint does not state facts sufficient to constitute a cause of action; (2) that the action was not commenced within the time limited by law, to wit, within the six years limited by subd. 7, sec. 4222, R. S. From an order sustaining such demurrer the plaintiff appealed.

*J. C. McKenney*, for the appellant.

For the respondent there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. Geo. P. Miller*.

CASSODAY, J.   To hold, on demurrer to a complaint under subd. 7, sec. 2649, R. S., that the action was not commenced within the time limited by law, it must "appear upon the *face*" of the complaint when the cause of action accrued (sec. 4219), and also that it was not commenced within the time limited.   This being so, the return of the officer as to the time of serving the summons cannot be resorted to on such demurrer for the purpose of fixing the time when the action was commenced.   But where the complaint alleges that an act was done on a certain day, it must be presumed that the action was not commenced until after that day. *Prentice v. Ashland Co.* 56 Wis. 345.   Here the complaint alleges the recording of the quitclaim deed from Newkirk and wife to the plaintiff, October 2, 1882.   We must therefore assume that the action was commenced after that date.

This being so, the question recurs whether the action was commenced within the time limited by subd. 7, sec. 4222, R. S., which, with sec. 4219, R. S., is to the effect that an action for relief on the ground of fraud, in a case which was, on and before February 28, 1857, solely cognizable by the court of chancery, must be commenced within six years after the cause of action accrued, but that the cause of action in such case shall not be deemed to have accrued until the discovery by the aggrieved party of *the facts constituting* the fraud.

It stands confessed that this is a case which, prior to February 28, 1857, was solely cognizable by the court of chancery.   The only remaining question under the statute is whether it appears upon the face of the complaint that the action was not commenced within six years after the plaintiff discovered the facts constituting the fraud.   The facts alleged, if true, clearly show that the defendant Rogers, as attorney and legal adviser of the plaintiff, and after sundry deceits, false representations and pretenses, finally, and on April 9, 1874, consummated a very gross and cruel fraud

upon the plaintiff, while she was sick in bed, suffering from nervous prostration to such an extent as to disqualify her from doing business understandingly, whereby he secured to himself, or rather to himself and his co-defendant, *Burnham*, the land in question, then worth $30,000, and now worth $150,000, for $18,000. From the complaint it appears that the title was obtained in the name of one Newkirk whom Rogers falsely represented to be a wealthy capitalist in the east, but who was, in fact, his insolvent brother-in-law, having no knowledge or information of the transaction, and never obtaining any until in September, 1882. It also appears that April 14, 1874, Rogers, by means of a power of attorney from Newkirk, conveyed the land to the defendant *Burnham* for a consideration as expressed in the deed of $18,000, and on the next day *Burnham* reconveyed to Rogers an undivided one-half of the land for a consideration as expressed in the deed of $10,000, neither of which deeds were recorded until in May, 1875; and that these deeds were made and received by Rogers and *Burnham* for the purpose of defrauding the plaintiff out of her lands, and with full knowledge on the part of *Burnham* of all the facts constituting the fraud. This being so, there can be no doubt but what *Burnham* was chargeable with all the consequences of the fraud. *O'Dell v. Rogers*, 44 Wis. 136.

It is alleged that the plaintiff first learned of these deeds in July, 1876, and then suspected that Rogers had practiced some deceit upon her, and notified her attorney accordingly; but it does not appear that she or her attorney knew of any other fact tending to disclose the fraud until in September, 1882, notwithstanding her attorney inquired for Newkirk and endeavored diligently to ascertain the facts in relation to the pretended purchase by him. It is strenuously urged by counsel for the defendants that the discovery by the plaintiff of the *Burnham* and Rogers deeds in July, 1876, was a discovery of the fraud, or at least the discovery of a fact

sufficient to put her upon inquiry, and to set the statute of limitations running against her. It is to be remembered, however, that "the facts constituting the fraud" had all fully transpired four days prior to the execution of either of those deeds. Those facts embraced the artifices, deceits, and false pretenses brought to bear upon the plaintiff, and which finally induced her to give the deed running to Newkirk. But these deeds were apparently given by way of dividing the spoil obtained by virtue of the fraud. True, the fact that one of the deeds ran to Rogers, and that they were executed so soon after the deed to Newkirk, and both kept from the records for more than a year, naturally induced her to suspect that some deceit had been practiced upon her. But that was a mere suspicion, putting her upon inquiry, to be sure, but not of a nature to necessarily lead to the discovery that the pretended purchase by Newkirk was a sham, and that the several offers which she had previously received for her property had been made in good faith, and not the contrary, as falsely represented by her legal adviser.

Of course, "the facts constituting the fraud" which, within the meaning of the statute, are thus to be discovered, have no reference to open, visible facts, known to the aggrieved party at the time, for then there would be nothing to be discovered. On the contrary, they are such facts as are unknown to such aggrieved party, but known, concealed, and kept secret by the party committing the fraud. While such facts are concealed from and unknown to the aggrieved party, the statute will not run against her unless she is chargeable with notice of such facts. When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry, it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice

of all facts to which such inquiry might have led.   But here the discovery of the two deeds, standing by themselves and unconnected with the other facts, gave no indication of any of the facts constituting the fraud; nor did they point out where any of those facts could, upon inquiry, be ascertained. In the language of the court in *Kuhn's Appeal*, 87 Pa. St. 100: "The foulness was not on paper; it was in the assurances and concealments of him who was bound to disclose everything to his ward [here, client] which she ought to know." We may well conceive how it might have been regarded as an honest transaction.   "The discovery by the aggrieved party of the facts constituting the fraud" is an actual discovery, and not a mere constructive discovery. *McMahon v. McGraw*, 26 Wis. 622.   The fact that the plaintiff knew of the deeds in July, 1876, simply charged her with notice of the contents of the deeds, but did not charge her with notice of any facts transpiring prior to the deeds, and to which no reference was made in either of the deeds. *Godbold v. Lambert*, 8 Rich. Eq. 155.

In a case like this the statute of limitations will not begin to run against the aggrieved party until such party has discovered the facts constituting the fraud, or has information of such a nature as would, upon diligent inquiry, lead to the discovery of such facts.   Of course, no person is bound to commence an action on mere suspicion or rumor.   The discovery, or the information which, upon diligent inquiry, would lead to the discovery, of facts sufficient to set the statute of limitations in motion, must be such facts as would impress a reasonable person with the belief that the transaction was, in fact, fraudulent.   The views above expressed are not in conflict, but in harmony, with the opinion of the learned judge in *Carr v. Hilton*, 1 Curt. 390, cited and relied upon by counsel for the defendants, .and, moreover, they seem to be supported by abundance of authority. *Kennedy v. Green*, 3 Mylne & K. 699; *Hovenden v. Lord Annesley,* ·

O'Dell vs. Burnham and wife, imp.

2 Schoales & L. 607; *Martin v. Smith*, 1 Dill. C. C. 85; *Bailey v. Glover*, 21 Wall. 342; *First Mass. Turnpike Co. v. Field*, 3 Am. Dec. 124; *Homer v. Fish*, 1 Pick. 435; *Rice v. Burt*, 4 Cush. 208; *Kane v. Bloodgood*, 7 Johns. Ch. 90; *S. C.* 11 Am. Dec. 417; *App v. Dreisbach*, 2 Rawle, 287; *S. C.* 21 Am. Dec. 447; *Reeves v. Dougherty*, 27 Am. Dec. 496; *Haynie v. Hall's Ex'r*, 42 Am. Dec. 427; *Kuhn's Appeal*, 87 Pa. St. 100.

We have no controversy here with the class of cases in which it is held that the rules above indicated do not apply in actions at law, for this is purely an equitable action, and in such case all the courts agree that it does apply. The distinction is pointed out in some of the above cases, notably in *Bailey v. Glover*, in which the opinion was written by Mr. Justice MILLER, of the supreme court of the United States. "In determining when the statute of limitation begins to run, in case of fraud, regard may be had to the condition and circumstances of the person on whom the knowledge of the facts is to operate." *Ferris v. Henderson*, 12 Pa. St. 49; *S. C.* 51 Am. Dec. 580. Here, the person was a woman peculiarly circumstanced, who had been thrown off her guard by the treachery and fraud of one whom the law and custom had given her reasonable ground to trust. We must hold, both upon reason and authority, that the discovery of the *Burnham*-Rogers deeds, in July, 1876, was not a discovery of the facts constituting the fraud, nor did they indicate where such facts could have been effectually discovered upon diligent inquiry.

It appears from the allegations of the bill that the facts constituting the fraud were not discovered until September, 1882. Counsel for the defendants invoke the doctrine of laches to defeat this action. But in the language of Baron ALDERSON in *Brooksbank v. Smith*, 2 Younge & C. 60: "The statute does not absolutely bind courts of equity, but they adopt it as a rule to assist their discretion. In cases of

fraud, however, they hold that the statute runs from the discovery, because the *laches* of the plaintiff *commences from that date*, on his acquaintance with all the circumstances. In this, courts of equity differ from courts of law, which are absolutely bound by the words of the statute." The same rule has been sanctioned by the courts of this country. *Martin v. Smith*, 1 Dill. C. C. 85; *Ferris v. Henderson*, 12 Pa. St. 49. Our statute in question fully recognizes and adopts the old equitable rule. Besides, mere delay in consequence of the deception, concealment, and false pretenses of the party committing the fraud, is not available to such party to enable him to retain the fruits of the fraud. *Richardson v. Jones*, 3 Gill & J. 163; *S. C.* 22 Am. Dec. 294; *Haynie v. Hall's Ex'r*, 42 Am. Dec. 427. The respondents stand in the shoes of Rogers.

The objection that the plaintiff did not, prior to bringing the action, tender back the money, is not available in an equitable action like this, where the court can protect the rights of all the parties. The plaintiff offers to return it. It could, at most, only affect the question of costs.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.