At this point, jurisdiction based on diversity of citizenship appears appropriate.

## ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that defendant O'Shea's motion to dismiss be and the same is granted as to Counts I, II, and IV, and denied as to the remainder.

IT IS HEREBY FURTHER ORDERED that defendant Payne's motion to dismiss be and the same is granted as to Counts I and IV, and denied as to the remainder.

IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendants Rothaus, Bartels, Early, Watkins, Janssen, and Begley, d/b/a Rothaus, Bartels, Early & Co., be and the same is granted as to Counts I and IV, and denied as to the remainder.

IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendant Public Water Supply District No. 7 and its individually named officers and directors be and the same is granted as to Counts I, II, and IV, and denied as to the remainder.

IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendants Stinson, Mag & Fizzell, Fizzell, Starnes, Petrie, and O'Flaherty be and the same is granted as to Counts I, II, and IV, and denied as to the remainder.

CONTINENTAL ASSURANCE COMPANY, an Illinois insurance corporation, Plaintiff,

v.

AMERICAN BANKSHARES CORPORATION, a Wisconsin corporation; Federal Deposit Insurance Corporation, a federal agency acting as receiver for American City Bank & Trust Company, N.A.; Colonial Bank & Trust Company, an Illinois banking corporation; Ernst & Ernst, a partnership; Harold L. Erickson; Walter F. Benz; William Bruce, II; John D. Cahill; Gerald S. Colburn; John De Belak; Raymond L. Callen; Peter F. Wegmann; Henry S. Lauterbach; Nicholas J. Lesselyoung; Harold F. Lichtsinn; W. Stanley Pearce; Clement J. Schwingle; James W. Sullivan; Robert J. Trecker; Richard D. Wright; Bernard D. Heifetz; Raymond E. Scroggins; William E. Wierdsma; Albert M. Deshur; Edward A. Korpady; Edward C. Radi; and Barrett S. Zuckerman, Defendants.

No. 76–C–248.

United States District Court, E.D. Wisconsin.

Sept. 21, 1984.

See also, D.C., 540 F.Supp. 54, D.C., 46 B.R. 206.

Howard A. Pollack, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., Andrew W. Horstman and Harding A. Orren, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiff.

Raymond E. Scroggins, pro se.

Edward C. Radi, pro se.

Dominic S. Amato, Fiorenza, Weiss, Amato & Persa, Milwaukee, Wis., for defendant Wierdsma.

Ronald L. Wallenfang and Matthew J. Flynn, Quarles & Brady, Milwaukee, Wis., for defendants Deshur, Heifetz, Korpady, Lauterbach, Lesselyoung, Lichtsinn, Pearce, Colburn, Bruce, Debelak and Schwingle.

William H. Alverson and William B. Graves, Godfrey & Kahn, Milwaukee, Wis., for defendant Ernst & Ernst.

David J. Cannon and Jose Olivieri, Michael, Best & Friedrich, Milwaukee, Wis., for defendant Wegmann.

William E. Callahan, Jr., Davis & Kuelthau, Milwaukee, Wis., for estates of defendants Benz and Wright.

William R. Soderstrom, Fox, Carpenter, O'Neill & Shannon, Milwaukee, Wis., for defendant Trecker.

Harold L. Erickson, pro se.

## ORDER

WARREN, District Judge.

This action arises out of the closing of American City Bank ("American") on October 21, 1975. Plaintiff Continental Assurance Corporation ("Continental"), the holder of a Subordinated Capital Note issued by American on April 10, 1973, seeks to recover $2,000,000.00, the amount of the note, from a number of defendants on various grounds of liability. Essentially, plaintiff alleges that the defendants, to greater and lesser degrees, are responsible for misrepresenting the financial stability of American as of 1972, and thereby induced plaintiff to agree to the $2,000,000.00 loan.

Several motions are currently pending in this case. Defendant Ernst & Ernst ("Ernst"), now known as Ernst & Whinney, has asked that the Court dismiss the complaint on its merits and/or on various jurisdictional grounds. Defendants William Bruce, II, Gerald S. Colburn, John Debelak, Albert M. Deshur, Bernard D. Heifetz, Edward A. Korpady, Henry S. Lauterbach, Nicholas J. Lesselyoung, Harold F. Lichtsinn (deceased), Estate of Clement J. Schwingle, and W. Stanley Pearce (hereafter "the Outside Directors"), have asked for summary judgment dismissing the claims against them. Defendant William Wierdsma has asked for summary judgment dismissing all of the causes of action against him and, in the alternative, that counts 4 and 6 of the complaint be dismissed for lack of subject matter jurisdiction. A similar motion was filed by defendants Richard D. Wright (deceased) and the Estate of Walter F. Benz, and another by defendants Raymond E. Scroggins and Edward C. Radi.

Finally, plaintiff has filed two motions for substitution of defendants who have died during the considerable time span of this litigation. Plaintiffs seek to substitute Geraldine R. Lichtsinn in place of Harold F. Lichtsinn, and Florence M. Hanson in place of Richard D. Wright.

Due to the similarity of the summary judgment motions and the arguments in support thereof, the Court will consider the motions together and simply distinguish the defendants and their arguments when necessary.

## I. BACKGROUND

The following is a brief account of the events which led to this case. On July 31, 1972, American filed an application with the Comptroller of the Currency to convert its status from a state bank to a national banking association. The minutes of American's October 18, 1972 Board of Directors meeting reveal that the application was approved "conditioned upon our selling $2,000,000.00 of debentures within a six-month period" (Groll Affidavit, Exhibit 2).

Late in 1972, American contacted Continental seeking funds to comply with the Comptroller's capital requirement, and in early 1973, they began the negotiations which led to the Note Agreement upon which this case is based.

On February 9, 1973, Ernst issued an opinion certifying the consolidated financial statements of American Bankshares Corporation and its subsidiaries, including American, for the year ending December 31, 1972. The Note Agreement was finally executed on April 10, 1973.

Despite the infusion of the additional $2,000,000.00 into American's capital structure, its financial situation continued to deteriorate. American attempted to seek new sources of capital throughout 1973, 1974 and 1975. Such attempts were unsuccessful and, on October 21, 1975, the Comptroller of Currency declared American insolvent.

On April 7, 1976, plaintiff commenced this action against all of the above-named defendants. The original complaint contained 16 counts, not all of the defendants being charged in each count. In response to various motions in the course of this action, the Court dismissed counts 3, 5, 9, 11, 13, 14, 15 and 16.

The following are claims which remain against the defendants Outside Directors, William Wierdsma, Raymond Scroggins and Edward C. Radi, and Richard D. Wright (deceased) and the Estate of Walter F. Benz: count 1 (asserting a claim based on section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5); count 2 (asserting a claim under section 17(a) of the Securities Act of 1933); count 4 (asserting a claim under sections 551.41 and 551.59 of the Wisconsin Statutes); and count 6 (asserting a claim for common law fraud). Counts 7, 8, 10, and 12 remain against defendant Ernst. These claims correspond in terms of their statutory or common law basis to counts 1, 2, 4 and 6, respectively, brought against the other defendants.

## II. STATUTE OF LIMITATIONS

All of the defendants have moved for summary judgment on the statutory causes of action which have been brought against them (i.e., counts 7, 8 and 10 in the case of Ernst and counts 1, 2, and 4 in the case of the other defendants), alleging that these claims are barred by the applicable statute of limitations. The Court agrees, and grants the defendants' motions for summary judgment on counts 1, 2, 4, 7, 8 and 10.

There is no dispute that the applicable statute of limitations with regard to the aforementioned claims is found in Wisconsin Statutes § 551.59(5). This Court has previously determined that "the statute of limitations appropriate to section 10b and Rule 10b–5 violations is contained in section 551.59(5) of the Wisconsin Statutes." *Colonial Bank & Trust Co. v. American Bankshares Corporation*, 478 F.Supp. 1186, 1191 (E.D.Wis.1979); *affirmed sub nom, Cahill v. Ernst & Ernst*, 625 F.2d 151 (7th Cir.1980). Clearly, this section also sets forth the statute of limitations with regard to civil liabilities for violations of Wisconsin securities law. Section 551.59(5) provides that:

(5) No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires, but the time specified for commencing such action shall be extended by reason of any fact and for the time specified in §§ 893.13 and 893.16 to 893.23.

There is also no dispute that plaintiff's cause of action arose when the Note Agreement was executed. Since the complaint was filed on April 7, 1976, and the Note Agreement was executed on April 10, 1973, the three-year period referred to in the statute had not expired when the action was brought and is not relevant for purposes of this discussion. It is the one-year period referred to in the statute which defendants contend had passed before the complaint was filed.

The second prong of § 551.59(5) provides that an action may not be brought later than one year after "discovery of the facts constituting the violation...." This Court has previously determined that the term "discovery" as used in § 551.59(5) does not require that the plaintiff become aware of the ultimate fact of fraud. *Cahill v. Ernst & Ernst*, 448 F.Supp. 84, 88 (E.D.Wis.1978); *vacated and remanded*, 588 F.2d 835 (7th Cir.1978); *reaffirmed on remand sub nom, Colonial Bank & Trust Company v. American Bankshares Corporation*, 478 F.Supp. 1186 (E.D.Wis.1979), *affirmed*, 625 F.2d 151 (7th Cir.1980). Quoting *Koehler v. Haechler*, 27 Wis.2d 275, 278, 133 N.W.2d 730, 731 (1965), this Court stated that:

> "Actual and complete knowledge of the fraud on the part of the plaintiff is not necessary in order to set the limitation period running.
>
> 'When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry, it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice of all facts to which such inquiry might have led.' [ *O'Dell v. Burnham*, 61 Wis. 562, 21 N.W. 635 (1884) ].
>
> Commenting on the above passage, the (Wisconsin Supreme) Court stated in 1961: 'Under the rule quoted above, it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud. The burden of diligent inquiry is upon the defrauded party as soon as he has such information as indicates where the facts constituting the fraud can be discovered.' [ *Milwaukee Western Bank v. Lienemann*, 15 Wis.2d 61, 112 N.W.2d 190 (1961) ]."

448 F.Supp. at 88.

The Seventh Circuit has also addressed this statute of limitations question and stated that "The statutory period does not await (the plaintiff's) leisurely discovery of the full details of the alleged scheme." *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). Thus, the question is whether plaintiff had knowledge of such facts prior to April 7, 1975, which would have disclosed the alleged fraud committed by defendants with regard to the Note Agreement had plaintiff made a diligent investigation.

In order to determine whether there were facts known to plaintiff which, if diligently investigated, would have disclosed the alleged fraud, the Court must first examine in greater detail the events which led to the execution of the Note Agreement, which events constitute the factual basis of plaintiff's claims. The following information was derived primarily from the Statement of Facts contained in Plaintiff's Memorandum In Opposition to Defendants' Motions For Summary Judgment, and is based upon testimony and documents produced during discovery. This statement of facts is not contested by the defendants, and the Court will assume for purposes of this discussion that this information is accurate.

Near the end of 1972, American transferred a large volume of securities from its trading account to its investment account. The transfers were made at cost, rather than at market price. All of the securities transferred showed losses, the aggregate of such losses being approximately $650,-000.00.

Standard accounting practice required that securities held in the trading account be marked down to the lower of cost or

market and that securities transferred from the trading account be valued at market. American did not follow this practice in 1972. Had the proper practice been followed, American's net income would have been reduced by $246,000.00. Plaintiff alleges that Ernst knew about these transfers, but allowed the transfers to be made and recorded at cost.

The second major factual basis for plaintiff's claims concerns a real estate loan made by American to Bernard I. Mirochnick. The loan was made in order to finance a development known as Beau Court, and was one of American's largest loans as of December, 1972. On December 31, 1972, the loan proceeds had been almost fully disbursed, but the development was less than 70 percent completed, at best.

The deposition of Raymond Scroggins, former president of American, reveals that several of the directors of American were aware of the problems with the Mirochnick loan. This information was not disclosed to the plaintiff prior to the execution of the Note Agreement, however. The 1972 financial statements of American Bankshares Corporation, audited by Ernst, also did not reflect the poor state of this loan, nor did they disclose that securities transferred out of the trading account had been transferred at cost rather than at market. Therefore, plaintiff has alleged that Ernst materially overstated the 1972 actual income of American due in part to the failure to establish adequate loan loss reserves.

The question now before the Court is whether facts known to plaintiff prior to April 7, 1975, would, if diligently investigated, have led plaintiff to discover these allegedly fraudulent actions by the defendants. It is undisputed that plaintiff was aware of the following information prior to April 7, 1975. This information is contained in documents obtained in the course of discovery from plaintiff's files, as attested to by Thomas J. Donnelly, one of the attorneys for the Outside Directors, in his affidavit of October 26, 1982.

The first such document is a letter dated August 1, 1973, from Harold (Pete) Erickson, chairman of the Board of American Bankshares Corporation, to Aid Association for Lutherans. This document contains the handwritten markings of William Murry, who, in 1973, was an investment officer for CNA and who reviewed the loan transaction on behalf of plaintiff. The letter discloses that American had sustained substantial securities losses in its trading account:

"Unfortunately, the net income increase from ordinary operations was more than overcome by losses in our trading account ... Even though almost all of our trading securities were in the 1–3 year maturity range, markdown to market and losses from actual sales exceeded our worst expectatons ..."

(Letter of Harold Erickson, August 1, 1973.)

The second document is a copy of the 1973 audited financial statements of American Bankshares Corporation and its subsidiaries which was prepared by Ernst. These financial statements, particularly Note C attached at the back of these statements, explain the problems associated with the Mirochnik loan and the bad debt reserves established with respect to that loan.

The third document is a letter dated April 26, 1974, from Barrett I. Zuckerman, then senior vice-president of American Bankshares Corporation, to Warren Murry requesting an extension of certain reporting requirements of the Note Agreement. At the close of his letter, Mr. Zuckerman stated that American hoped to "wind this mess up soon and have a prompt meeting with you to completely inform you of our situation." (Letter of Barrett Zuckerman, April 26, 1974.)

The fourth document is a waiver and amendment dated May 24, 1974. This document contains admissions by American that they are in default as to Section 7.4 of the Note Agreement, which contains certain reporting requirements, and that they may be in default as to Section 7.7, which restricts the payment of dividends and other stock payments. With respect to Section 7.7, American disclosed that its certi-

fied public accountants required American to increase its loan loss reserve in 1973 by an additional $3,000,000.00.

This waiver and amendment was not granted by plaintiff, but was replaced by a substitute waiver and amendment drafted by plaintiff's counsel, Chapman and Cutler. The substitute waiver and amendment contains a clause requiring the shareholders of American to contribute at least $3,000,000.00 to increase the capital and/or capital surplus of American, in recognition of the required increase in loan loss reserves.

A further increase in American's loan loss projection was revealed to plaintiff in a letter dated November 14, 1974, from defendant Raymond L. Callen, president of American City Bank, to Warren Murry. Attached to this letter is the 10–Q Report of American Bankshares Corporation for the nine-month period ending September 30, 1974. The postscript at the end of Mr. Callen's letter is particularly telling with regard to American's financial plight:

"P.S. Subsequent to the drafting of this letter, in a meeting with our accountants, Arthur Andersen & Co., we were advised to set up an additional reserve for the (Mirochnik) project in the amount of $1.6 million.

Again, we look forward to the chance to explain all of this to you when we meet with you."

(Letter of Raymond L. Callen, November 14, 1974, page 2.) At the top of this letter is a handwritten notation by Warren Murry to have a copy of the letter sent to his then immediate superior, Murray Patterson.

In addition to the information contained in these documents, which plaintiff undisputably obtained prior to April 7, 1975, certain other documents which one would expect to find in plaintiff's files as of that date are conspicuous by their absence. Specifically, American Bankshares Corporation had failed to file an annual 10–K Report for the year ended December 31,

1974, nor did it file a 10–Q Report for the quarter ended March 31, 1975.[1] As a result of American Bankshares' failure to file the 10–K Report, the Commissioner of Securities for the State of Wisconsin entered an order on April 15, 1975, suspending all trading of the corporation's common stock by licensed broker-dealers and agents in Wisconsin.

In response, plaintiff claims that knowledge of these facts is not indicative of any fraudulent activities by defendants relative to the 1972 Note Agreement. Plaintiff contends that there was "... no reason to think that the later developments were anything but contemporaneous with" problems that had occurred at American subsequent to the execution of the Note Agreement. (Plaintiff's Memorandum In Opposition To Defendants' Motions For Summary Judgment, December 13, 1982, page 9.) In particular, plaintiff points to the depressed real estate market which existed in the early-to-mid 1970's, and claims that it was a plausible explanation for American's financial problems. Plaintiff argues that not until August 29, 1975, when a report was issued to the shareholders, customers, and friends of American Bankshares and American, did it obtain any indication of misstatements in American Bankshares' 1972 financial reports. In addition, plaintiff contends that issues relating to the parties' intent and/or states of mind are "particularly inappropriate for summary adjudication." *Id.*, page 3.

The Court agrees, to an extent, with plaintiff's contentions and statement of the law. Summary judgment is inappropriate where there is a dispute "about either the facts of the controversy or *the inferences to be drawn from such facts.*" *Central National Life Insurance v. Fidelity and Deposit Company of Maryland*, 626 F.2d 537, 539 (7th Cir.1980), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)

---

1. This information was obtained from American Bankshares Corporation's 8–k Report for the month of November, 1975. Although it is not relevant for purposes of what plaintiff knew as of April 7, 1975, regarding American's financial status, this report also reveals that no 10–Q Reports were filed on June 30, 1975, or on September 30, 1975.

(emphasis in original); *Howell v. Continental Credit Corp.*, 655 F.2d 743, 748 (7th Cir.1981). Furthermore, any inferences to be drawn from undisputed facts "must be viewed in the light most favorable to the party opposing the motion." *Diebold, supra,* 369 U.S. at 655, 82 S.Ct. at 994.

■ In this case, there is no dispute that the information contained in the aforementioned documents was known to the plaintiff long before April 7, 1975. Moreover, the Court is willing to accept plaintiff's explanation that it believed that the increases in American's loan loss reserve were due to the deteriorating real estate market. However, in light of the interpretations of § 551.59(5) made by the Wisconsin Supreme Court in *Koehler* and this Court in *Cahill*, the plaintiff's duty to investigate a possible fraud is not dependent upon its knowledge or "discovery" of that fraud. The duty arises when facts are known which would, "if diligently investigated, disclose the fraud." *Cahill, supra,* at 88.

In analyzing the undisputed facts in light of § 551.59(5) and *Cahill*, this Court is not required to determine to what cause the plaintiff attributed the necessary increases in American's loan loss reserve. The Court is not being asked to read the plaintiff's corporate mind and decide whether it knew, prior to April 7, 1975, that a fraud had occurred relative to the 1972 Note Agreement. The Court's duty in this case is to evaluate the facts known to plaintiff and determine if, upon diligent investigation of those facts, the fraud would have been uncovered.

■ The Court believes that, for whatever reasons it had, the plaintiff failed utterly in its duty to monitor the loan it made to American. The undisputed facts in this case, along with the admissions of Warren Murry in his deposition, reveal that no investigation whatsoever was undertaken once plaintiff became aware that American's financial status had taken a marked downturn since the Note Agreement was executed in 1973. While the Court does not presume to be expert in the affairs of

the banking world, and giving due deference to plaintiff's explanation for it inactivity, the Court is astounded that a major financial institution such as plaintiff would sit idly by, knowing what it did about American's financial straits, and simply assume that the declining real estate market was the one and only cause. The undisputed facts will admit no other conclusion than that plaintiff's knowledge of American's required increase in its loan loss reserves, American's default with respect to the Note Agreement, and the revelation of the disasterous Mirochnik loan imposed a duty upon plaintiff to investigate the origin of these problems and that plaintiff failed to do so.

In concluding that the statute of limitations bars plaintiff's statutory causes of action, the Court notes that there has been no charge made, nor is there any indication from the record that defendants in any way attempted to cover up for their alleged misrepresentations. As the Seventh Circuit stated in *Trecker v. Scag*, 679 F.2d 703, 708 (7th Cir.1982), concealment of the fraud would toll the statute of limitations until the fraud was actually discovered:

"At least two types of fraudulent concealment toll a statutory period ... In the first type, the most common, the fraud goes undiscovered even though the defendant after commission of the wrong does nothing to conceal it and the plaintiff has diligently inquired into its circumstances. The plaintiff's due diligence is essential here. (Citations omitted.) In the second type, the fraud goes undiscovered because the defendant has taken positive steps after the commission of the fraud to keep it concealed ... this type of fraudulent concealment tolls the limitations period until *actual* discovery by the plaintiff."

*Id.* (emphasis in original.)

Since there is no evidence of concealment in this case, plaintiff's "due diligence" was essential in order to toll the statute of limitations. Having known of the tremendous increase in loan loss reserves, the sudden appearance after 1972 of reported

problems with the Mirochnik loan, and the failure by American Bankshares to file certain annual and quarterly reports, plaintiff should have investigated the cause of these remarkable occurrences. Had plaintiff waited until it had evidence that American's financial problems existed prior to the execution of the Note Agreement, there would have been, as defendants claim, nothing to investigate. Such a "leisurely" discovery of the fraud cannot be condoned. *See Hupp, supra.*

While this Court is not anxious to dismiss through summary judgment a case against defendants whose culpability might well have been demonstrated at trial, plaintiff's own lack of diligence compels the result herein. The fact that plaintiff waited until three days before the three-year deadline under the first prong of § 551.59(5) implies that plaintiff waited as long as possible for relief other than that which is dispensed by the courts. Under the second prong of § 551.59(5), however, plaintiff waited too long.

As a final point, this case is not one where the Court is deciding an issue of fact in resolving the motions for summary judgment. The facts are uncontroverted; the only decision to be made is whether, pursuant to § 551.59(5), knowledge of these facts imposed a duty upon plaintiff to investigate their cause. Thus, the Court is merely interpreting the law in light of undisputed facts, not resolving an issue which should be decided by the judge or jury at trial, as plaintiff contends.

For the foregoing reasons, counts 1, 2, 4, 7, 8, and 10 of the complaint are dismissed as to all defendants. Since this decision disposes of those claims, defendants' other arguments in favor of dismissing those counts need not be considered.

### III. COMMON LAW CLAIMS

Having dismissed plaintiff's statutory causes of action, two common law claims remain pending before the Court: count 12 is a common law negligence claim against Ernst, and count 6 is a common law fraud claim against the remaining directors.

**A.** Count 12: Common Law Negligence.

Ernst contends that, should the federal claims be dismissed, the state claims must also be dismissed for lack of jurisdiction. Alternatively, Ernst argues that count 12 should be dismissed for failure to state a claim, since Ernst owed no duty of care to plaintiff.

In opposition, plaintiff asserts that its state law claims would be barred by the applicable statute of limitations, and that there now exists no other forum to bring these claims. Plaintiff cites *O'Brien v. Continental Illinois National Bank & Trust*, 593 F.2d 54, 65 (7th Cir.1979), for the proposition that pendent state law claims should not be dismissed on jurisdictional grounds when a subsequent state court action would be time-barred.

■ Clearly, there is no independent federal jurisdiction regarding the twelfth claim. Ernst has submitted an affidavit which demonstrates that a number of partners in Ernst are residents of Illinois, the same state of which plaintiff is a citizen. This Court has previously stated that, "for purposes of diversity, the citizenship of a partnership is that of each of its partners." *Cahill, supra*, at 89. Therefore, no diversity jurisdiction exists as to count 12.

Ernst's argument that count 12 should be dismissed for failure to state a claim upon which relief can be granted also has merit. At issue here is the duty of an accountant to those who are not in privity of contract. Both parties cite the Seventh Circuit's decision in *Hochfelder v. Ernst & Ernst*, 503 F.2d 1100 (7th Cir.1974) in support of their positions.

In *Hochfelder*, the court discussed the evolution of the duty owed by accountants to those who had not contracted to have the financial statements at issue prepared. Originally, the courts held that accountants owed no duty to persons not in privity of contract. *Id.* at 1107. The foundation for these decisions was laid by Judge Cardozo in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), where he stated:

"If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted in these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences."

255 N.Y. at 179, 174 N.E. at 444.

In time, however, courts began to recognize a limited liability of accountants "to those who, although not themselves foreseen, are members of a limited class whose reliance on the financial statements is specifically foreseen." *Hochfelder, supra,* at 1107. *See also R.I. Hospital Trust National Bank v. Swartz, et al.,* 455 F.2d 847, 851 (4th Cir.1972); *Rusch Factors, Inc. v. Levin,* 284 F.Supp. 85 (D.R.I.1968).

■■■■ The Court is of the opinion that count 12 should be dismissed since the Court lacks pendent jurisdiction over this state law claim and because the plaintiff has failed to state a claim upon which relief can be granted. Considering first the jurisdiction question, plaintiff has correctly stated the law that jurisdiction over pendent state law claims may be retained if a subsequent state action would be time-barred. *O'Brien, supra,* at 65. However, the Seventh Circuit's decision in *O'Brien* was premised on the fact that the plaintiff there had pursued his federal claim "in good faith and with diligence." *Id.* This Court has already decided that plaintiff did not diligently pursue its federal claims, and therefore *O'Brien* is distinguishable. Moreover, when the plaintiff, as here, did not diligently pursue its federal claims, this Court sees no reason why such an extraordinary remedy should be granted in its favor.

As for the merits of plaintiff's claim, Ernst has submitted affidavits in support of its contention that it had no knowledge of the possible loan from plaintiff to American at the time the American Bankshares financials were prepared. On the other hand, plaintiff has submitted certain notes obtained from Ernst's files which demonstrate that Ernst knew that American would seek a $2,000,000.00 loan in order to be chartered as a national bank.

■■■■ Even though Ernst knew that American proposed to sell $2,000,000.00 worth of debentures, it is evident that the buyer of those debentures was unknown to Ernst at the time the financials were prepared. It is important to note in this regard that the duty owed by accountants does not extend to all of those who might "foreseeably" rely on the financial statements, but only to those in a "limited class whose reliance on the financial statements is specifically foreseen." *Hochfelder, supra,* at 1107. Absent Ernst's knowledge as to who the purchaser of those debentures would be, it is impossible to characterize plaintiff as a member of a "limited class" of potential purchasers. Nor is it possible that plaintiff's reliance on the financials could have been foreseen when plaintiff's identity was not known. As such, plaintiff was one of an indeterminate number whose reliance on the financials was probably foreseeable, but not specifically foreseen.

Since plaintiff's reliance on the financials was not specifically foreseen, no duty was owed them and this claim is therefore dismissed on its merits, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. For the reasons discussed above, the claim is also dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure.

**B.** Count 6: Common Law Fraud.

The final remaining claim in this action is the common law fraud claim against the defendants other than Ernst, which group consists of former Outside Directors and former officers and directors of American. The Court finds that plaintiff has stated a claim upon which relief may be granted, and that material issues of fact exist as to this claim. Therefore, the Court will not dismiss this count.

Defendants Outside Directors contend that no duty was owed by the directors of American to disclose any misrepresentations with respect to American's financial statements. Citing *Lanza v. Drexel & Company,* 479 F.2d 1277 (2nd Cir.1973), the Outside Directors contend that a director is not "an insurer of the honesty of individual officers of the corporation," nor is a director "under a duty to investigate each ... transaction and to inquire as to what representations had been made ..." *Id.* at 1281. Finally, citing *In Matter of Estate of Lecic,* 104 Wis.2d 592, 312 N.W.2d 773 (1981), the Outside Directors state that the "failure to disclose a fact, is not misrepresentation unless the nondisclosing party has a duty to disclose that fact ... The question of legal duty to disclose is a question of law." 104 Wis.2d at 604, 605, 312 N.W.2d 773.

Defendants Outside Directors' statement of the law is essentially correct. However, the Second Circuit's holding in *Lanza* that a director has no duty to investigate fraudulent transactions was conditioned on the director's ignorance of the transaction in question. A more complete statement of that portion of the court's opinion is as follows:

"... neither the language nor intent of section 10(b) or Rule 10b–5 would justify a holding (1) that a director is an insurer of the honesty of individual officers of the corporation in their negotiations which involve the purchase or sale of the corporation's stock or (2) that, although he does not conduct the negotiations, participate therein, or have knowledge thereof, he is under a duty to investigate each such transaction and to inquire as to what representations had been made, by whom and to whom, and then independently check on the truth or falsity of every statement made and document presented."

*Lanza, supra,* at 1281.

The testimony of defendant Raymond Scroggins at his deposition was that all directors were aware of the problems with the Mirochnik loans prior to the execution of the Note Agreement. Furthermore, the directors were undeniably aware of the pending sale of debentures. Under these circumstances, the *Lanza* decision does not compel this Court to conclude that no duty was owed by the Outside Directors to plaintiff.

 As the Outside Directors demonstrate in their supporting briefs, plaintiff has merely alleged in the complaint that the directors exerted "control" over American at the times relevant to this cause of action. Paragraph 38 of the complaint states:

"Upon information and belief, each of the defendants to this claim ... exerted practical control and legal control over American City at all times material to this claim."

While this allegation does not specifically claim that the directors knew about the pending loan or the fraudulent misrepresentations, the implication is clear that "practical control" would imply such knowledge. Regardless, the Court is not willing to grant summary judgment on this count based on such a fine distinction. An issue of fact exists regarding the common law fraud claim, and that issue must be resolved by the appropriate finder of fact. *See Wisconsin Real Estate Investment Trust v. Weinstein,* 509 F.Supp. 1289, 1297–98 (E.D.Wis.1981).

 In the alternative, all defendants as to count 6 move that this claim be dismissed on jurisdictional grounds. In support of this argument, defendants state that defendant Ernst is a partnership, some of whose partners are citizens of Illinois, and that as a result, there is no independent diversity jurisdiction as to all defendants in this case.

This argument does not merit much consideration. First, defendant Ernst was not charged in count 6, which is a separate allegation against certain officers and directors of American. Second, those officers and directors are not in partnership with Ernst, nor do any of them claim to be citizens of Illinois. Therefore, the Court would have diversity jurisdiction to hear

this state law claim, and it need not be dismissed as a pendent claim.

Finally, defendant William Wierdsma states in his affidavit that he has no recollection of being at the March 21, 1973 meeting of the Board of Directors of American City Bank and Trust at which meeting a resolution was passed authorizing the sale of the debentures to Continental. Furthermore, defendant Wierdsma testified at his deposition that he had no knowledge of any discussions concerning the sale of capital notes to plaintiff.

Although defendant Wierdsma claims to have no recollection of his involvement in or knowledge of the sale of capital notes to plaintiff, the Court is not satisfied beyond doubt that no issue of fact exists as to such knowledge or involvement. Summary judgment is not appropriate under these circumstances. *See Weinstein, supra,* at 1297–98. Likewise, the motions of Raymond E. Scroggins and Edward C. Radi, and Richard D. Wright and Estate of Walter F. Benz must also be dismissed, since they simply rely upon the briefs submitted by the other movants in this case and advance no different arguments in their favor.

For the foregoing reasons, the Court denies the motions of all of the defendants charged in count 6 of the complaint for summary judgment and/or dismissal of that claim.

## IV. MOTIONS TO SUBSTITUTE DEFENDANTS

Two motions for substitution of defendants pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure are pending in this case. Plaintiff has moved that the Court substitute the personal representative of defendant's estate, Geraldine R. Lichtsinn, in place of defendant, Harold F. Lichtsinn. Plaintiff has also moved that the personal representative of defendant's estate, Florence M. Hanson, be substituted as a defendant in place of defendant Richard D. Wright. The motion to substitute Geraldine R. Lichtsinn has been opposed, while the other motion for substitution has

not. For the reasons stated below, both motions are granted.

Defendant Harold F. Lichtsinn died on August 19, 1982, and his death was suggested upon the record on October 27, 1982. Defendant Richard D. Wright died on November 13, 1983, and his death was suggested upon the record on November 22, 1983. Both motions for substitution were made within 90 days after the respective deaths were suggested upon the record, as required by Rule 25(a)(1), Federal Rules of Civil Procedure.

Since the motion to substitute Florence Hanson in place of defendant Richard D. Wright is unopposed, the following discussion will pertain to the arguments in support of and opposing the substitution of Geraldine Lichtsinn in place of defendant Harold E. Lichtsinn. This motion is opposed on two grounds: (1) that this Court should reconsider its prior decision on the same issue with respect to another defendant in this case, and (2) that plaintiff's laxity in failing to prosecute its claims has impaired defendant's ability to defend the claims, so that laches should bar the instant motion.

### A. Reconsideration of Prior Decision.

Defendant urges that this Court reconsider its earlier decision in this case on an identical issue published in *Continental Assurance Company v. American Bankshares Corporation, et al.,* 483 F.Supp. 175 (E.D.Wis.1980), in which the Court permitted substitution of co-personal representatives in place of the defendant's estate. Plaintiff argues first, with regard to the federal claims, that the Court should reverse its own decision in *Continental* on the basis of *United States v. Daniel,* 47 U.S. (6 How) 11, 12 L.Ed. 323 (1848), despite the "clear trend" in lower courts away from *Daniel* that this Court noted in *Continental, supra,* at 483 F.Supp. 175. Because plaintiff produces no new authority to indicate that a federal securities claim should not survive defendant's death, the decision in *Continental* must stand, as to

this point.[2] *See e.g., Derdiarian v. Futterman Corporation*, 223 F.Supp. 265 (S.D.N.Y.1963).

Second, with regard to the underlying state claims, plaintiff argues that the holding of the Wisconsin Supreme Court in *Wogahn v. Stevens*, 236 Wis. 122, 294 N.W. 503 (1940), should control, because the Wisconsin Supreme Court's subsequent citations of the case indicate that the case is still viable and applicable. *See Prunty v. Schwantes*, 40 Wis.2d 418, 423–24, 162 N.W.2d 34 (1968), and *P.C. Monday Tea Company v. Milwaukee County E. Comm.*, 24 Wis.2d 107, 111, 128 N.W.2d 631 (1964). However, as plaintiff points out, neither of those cases involved securities claims, nor was the actual holding of *Wogahn* followed in either of those cases: that statutory securities law claims do not survive death. Moreover, the Wisconsin survival statute, Wis.Stat. § 895.01(1) continues to be applicable to the state law portions of plaintiff's claims providing that the claims survive defendant's death. *See Continental, supra*, 483 F.Supp. at 178–79.

Because plaintiff has produced no new law on the issue of state claim survival, this Court's decision in *Continental* must stand as to this part.

**B. Laches.**

█ Defendant's other argument is that plaintiff has failed to diligently prosecute this action over a period of several years, resulting in prejudice to defendant, because the suit can no longer be successfully defended. The record does not reflect that plaintiff has been lax in prosecuting this action since the complaint was filed. More importantly, it does not appear that laches is contemplated under the federal rules as a basis for denying a motion for substitution, or that delay in prosecution supports denial. Defendant has cited no authority in support of the laches argument.

Plaintiff's motions for substitution of Geraldine Lichtsinn in place of Harold F. Lichtsinn and Florence Hanson in place of Richard D. Wright are both granted.

In summary, defendants' motions for summary judgment as to counts 1, 2, 4, 7, 8, 10, and 12 are Granted. Defendants' motions for summary judgment and/or dismissal of count 6 are Denied. Plaintiff's motions for substitution of defendants are Granted.

---

**2.** The Court also notes that this argument is moot, since the federal claims have been dismissed as to all defendants.